

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00036-CV

_____

MICHAEL A. ZANCHI, M.D., MICHAEL A. ZANCHI, M.D., P.A.,
AND PARIS REGIONAL ANESTHESIA, P.A., Appellants

V.

REGINALD KEITH LANE, INDIVIDUALLY, AND AS
PERSONAL REPRESENTATIVE OF THE ESTATE OF
JUAMEKA CYNARRA ROSS, DECEASED, ET AL., Appellees

On Appeal from the 62nd Judicial District Court
Lamar County, Texas
Trial Court No. 79324

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss
Concurring Opinion by Justice Carter
Dissenting Opinion by Justice Moseley

OPINION

Twenty-four-year-old Juameka Cynarra Ross died after undergoing a splenectomy at Paris Regional Medical Center. Michael A. Zanchi, M.D.,[1] the anesthesiologist, was sued by Reginald Keith Lane, individually, and as personal representative of Ross' estate, for medical negligence allegedly resulting in Ross' death.[2] Lane filed the original petition on April 21, 2010, but did not serve Zanchi with process until September 16, 2010.[3] In the interim, on August 19, 2010, Lane mailed the expert report of Jeffrey Wagner, M.D.,[4] to Zanchi by certified mail, return receipt requested, as required by Section 74.351(a) of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2011). Zanchi filed a motion to dismiss the lawsuit, alleging that any transmittal of the expert report to him before the date he was served with

---

[1]Michael A. Zanchi, M.D., P.A., and Paris Regional Anesthesia, P.A., were named defendants with Zanchi. The three Zanchi defendants are hereinafter collectively referred to as Zanchi.

[2]In 2007, Ross was diagnosed with a condition known as idiopathic thrombocytopenic purpura (ITP) and was informed that she would have to undergo a splenectomy as part of the treatment for this condition. Ross was admitted to Paris Regional Medical Center for surgery in February 2008. The original petition alleged that Ross became cyanotic and a code blue was called to attempt to resuscitate her. Zanchi returned to the operating room, where he extubated the endotracheal tube and initiated multiple attempts to reintubate Ross. After her pulse was restored, Ross was transferred to Baylor University Medical Center in Dallas, where it was determined that her brain was functioning only at the level of the brain stem. Ross was removed from life support.

[3]The trial court issued an order dated September 7, 2010, authorizing substituted service on Zanchi. The trial court specifically found that Lane's previous attempts to serve Zanchi were unsuccessful. Zanchi was ultimately served with process personally while the process server was proceeding to execute substituted service.

[4]Wagner's report concludes that Zanchi improperly placed the endotracheal tube in the right main-stem bronchus and failed to reposition the tube during surgery.

2

process was no service at all, because he was not a party to the lawsuit.[5]  The trial court denied Zanchi's motion to dismiss.  Because Zanchi was a party to the lawsuit when he was timely served with the expert report, we affirm the trial court's order.[6]

*Zanchi Was a Party to the Lawsuit When Timely Served with the Expert Report*

A trial court's ruling on a motion to dismiss under Section 74.351(b) is reviewed for an abuse of discretion.  TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (West 2011); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877–78 (Tex. 2001).  A trial court abuses its discretion when it "reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law."  *In re Bass*, 113 S.W.3d 735, 738 (Tex. 2003); *Yilmaz v. McGregor*, 265 S.W.3d 631, 635–36 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).  When the facts are not in dispute, the question of whether service satisfied the requirements of Section 74.351(a) is a purely legal question.  Questions of law are subject to a de novo review.  *See Oak Park, Inc. v. Harrison*, 206 S.W.3d 133, 137 (Tex. App.—Eastland 2006, no pet.).[7]

---

[5]The expert report was mailed to Zanchi at Paris Regional Medical Center.  The return receipt or green card was signed by Chuey Potter.  While Zanchi does not admit that he received this report, neither does he deny having received it.

[6]Lane contends service of the expert report in this instance is sufficient because he exercised due diligence in serving Zanchi with process.  Because the "party" issue is dispositive and because inherent uncertainties surround the due diligence analysis, we do not reach this issue.

[7]"[A] trial court has no discretion in determining what the law is, which law governs, or how to apply the law."  *Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez*, 237 S.W.3d 869, 871 n.1 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *see also Buck v. Blum*, 130 S.W.3d 285, 290 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (de novo standard of review applies in reviewing interpretation of health care liability statute).

Zanchi contends the trial court erred by denying his motion to dismiss Lane's suit because Lane did not timely serve Zanchi with an expert report, as required by Section 74.351 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West 2011). Pursuant to Section 74.351(a), a claimant must serve on each "party or the party's attorney" one or more expert reports no later than the 120th day after the date the original petition was filed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). By statute, if an expert report is not served within the specified time period, the court must dismiss the claim with prejudice and award to the affected health care provider reasonable attorneys' fees and costs of court. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b)(1), (2). Each defendant physician whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the twenty-first day after the date the report was served, subject to waiver of those objections. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a).

Here, because Lane filed his lawsuit April 21, 2010, he was required to serve one or more expert reports on Zanchi or Zanchi's attorney by August 19, 2010, the 120th day after the filing of the original petition. Lane asserts that he timely served his expert report on Zanchi August 19, 2010, via certified mail, return receipt requested. It is undisputed that, at that time, Zanchi had not yet been served with process and that he was not served with process until September 16, 2010. Zanchi, therefore, contends that Lane did not serve his expert report on a "party" before the expiration of the 120-day period, as required. *See* TEX. CIV. PRAC. & REM. CODE ANN.

4

§ 74.351(a).  Zanchi maintains that the trial court was therefore required, upon motion, to dismiss the suit.   *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b)(2).

In support of his position, Zanchi points to the language of the statute, which provides that a claimant must serve on each "party or the party's attorney" one or more expert reports no later than the 120th day after the original petition was filed.   *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b)(2).   The term "party" is not defined in Section 74.351 or Chapter 74 of the Texas Civil Practice and Remedies Code.   "Any legal term or word of art used in this chapter, not otherwise defined in this chapter, shall have such meaning as is consistent with the common law." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(b) (West 2011).   The question then, of whether Zanchi was a party to the lawsuit when the expert report was served, hinges on the meaning of "party" under the common law.   We conclude that, under the common law and under the statutory scheme, one is a "party" if so named in a pleading, whether or not yet served.

Zanchi contends that, under the common law, to be a party, one must generally "be named in the pleadings and . . . be served, accept or waive service, or make an appearance."   *Yilmaz*, 265 S.W.3d at 637.   *Yilmaz* involved a health care liability claim in which the original petition was filed in March 2007.   Attempts to serve Yilmaz with process were unsuccessful.   McGregor alleged service of the expert report one day before the statutory deadline.   Because Yilmaz was not served with process before service of the expert report, he filed a motion to dismiss, claiming

5

the expert report was served at a "known wrong address," at a time when he was not a party to the suit. *Id.* at 635. The trial court denied the motion to dismiss.

On appeal, the First Court of Appeals ruled that Yilmaz was not a party to the lawsuit at the time the expert report was served and, thus, that the motion to dismiss should have been granted. In defining a party as one who must "be named in the pleadings and . . . be served, accept or waive service, or make an appearance," *Yilmaz* relied on *Ex parte Bowers*, 886 S.W.2d 346 (Tex. App.—Houston [1st Dist.] 1994, writ dism'd w.o.j.). In *Bowers*, the defendant complained that he did not receive notice of an injunction and was therefore not bound by its provisions. In its discussion of whether Bowers was bound by the injunction, the court stated, "A party to a suit generally is one named in the pleadings, who is served, accepts or waives service, or appears, and who participates at trial and contests the cause of action." *Id*. at 349. *Bowers* relies on *Mapco, Inc. v. Carter*, 817 S.W.2d 686 (Tex. 1991), in support of this definition. In addition, *Yilmaz* relies on *Mapco* for the proposition that "[m]erely being named in a petition as a defendant does not make one a 'party' to the lawsuit." *Yilmaz*, 265 S.W.3d at 637.

Our reading of *Mapco* does not support that proposition. In *Mapco*, the Texas Supreme Court ruled that a judgment may not be entered against a party not before the trial court. In that case, the Carters sued Mapco Underground Storage of Texas, Inc., and Texasgulf, Inc. Even though a related corporation, Mapco, Inc., was not named in the pleadings and was not served with process, a judgment was entered against it. In reversing that judgment, the court stated, "In no

6

case shall judgment be rendered against any defendant unless upon service, or acceptance or waiver of process, or upon an appearance." *Mapco*, *Inc*., 817 S.W.2d at 687. *Mapco* does not state, or even support the proposition, that one is not a "party" until that one is served with process, accepts or waives such service, or makes an appearance. Three of our sister courts have adopted the definition of "party" as used in *Yilmaz*.[8] In each of those decisions, the discussion has pointed to *Mapco* as the source of this definition. Our analysis leads us to the belief that such reliance is misplaced.

While *Mapco* recognizes the well defined concept that a party cannot be subjected to the jurisdiction of the court when that party has not been served with process, or has otherwise accepted or waived service, it did not undertake to define the term "party." Indeed, a person has no duty to participate in proceedings if the person has not been properly served, even if the person later becomes aware of the proceedings. *Ross v. Nat'l Ctr. for the Employment of the Disabled*, 197 S.W.3d 795, 797–98 (Tex. 2006) (per curiam). The concept of personal jurisdiction, however, as discussed in *Mapco* and in *Ross*, is distinct from the concept of party status. The Texas Supreme Court did not hold, in *Mapco* or *Ross*, that one named as a defendant in a lawsuit is *not* a party to that suit unless and until that person has been served, accepts or waives service, or

---

[8]Our sister courts in Fort Worth, Austin, and Corpus Christi have used the definition of "party" as one who has been served with process, waived service of process, or made an appearance. *See Dingler v. Tucker*, 301 S.W.3d 761, 766–67 (Tex. App.—Fort Worth 2009, pet. denied) (defendant named in original petition did not become party until served with process); *Carroll v. Humsi*, 342 S.W.3d 693, 701 (Tex. App.—Austin 2011, no pet.) (term "party" denotes defendant who has already been served with process, waived service, or entered an appearance in the action); *Carreras v. Zamora*, 294 S.W.3d 348, 350 (Tex. App.—Corpus Christi 2009, no pet.) (to be party to lawsuit, one must generally be served, accept or waive service, or make an appearance). We respectfully disagree.

7

makes an appearance. While it is true that a party must be served, accept or waive service, or otherwise appear in order for a judgment to be rendered against that party, it does not logically follow that such a party, named in the pleadings on file with the district clerk, is not a party to the lawsuit in which the party has been specifically named, merely because there is no obligation to participate until brought within the jurisdiction of the court. Stated another way, a party named in the pleadings is no less a party to the lawsuit even though that party has yet to be served.

Where a health care provider, and prospective defendant, is served with an expert report before suit is even filed against the provider, he or she is not a "party," but becomes one when a claim is asserted against him or her in a suit. *Poland v. Ott*, 278 S.W.3d 39, 48–49 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (noting distinction in Chapter 74 between use of "party" after suit filed and "physicians, and health-care providers" before suit filed). *See also Daybreak Cmty. Servs., Inc. v. Cartrite*, 320 S.W.3d 865, 871–72 (Tex. App.—Amarillo 2010, no pet.) ("party" status established when suit filed against him or her).

Not many years ago, the Texas Supreme Court affirmed that a "party who becomes aware of the proceedings without proper service of process has no duty to participate in them," thus tacitly recognizing that one can be a "party" to a legal proceeding even though not served with process. *Caldwell v. Barnes*, 154 S.W.3d 93, 97 n.1 (Tex. 2004); *see also Ross*, 197 S.W.3d at 796–97 (trial court had no jurisdiction either to enter judgment or enforce it against party who had neither been served nor appeared).

8

The Texas Rules of Civil Procedure generally refer to those named in pleadings as "parties" regardless of whether they have been served with process. The most prominent examples are connected to the pleading that initiates a lawsuit. The plaintiff's petition must list the "parties," thus, in every case, requiring that the designation as parties precedes those parties being served with process. TEX. R. CIV. P. 79. The Civil Case Information Sheet promulgated under Rule 78a also directs the plaintiff to complete it with the names of the "parties" named as defendants, certainly contemplating that the defendants are considered parties before being served with process. *See* TEX. R. CIV. P. 78a. There are other examples.[9]

The term "party" is defined by Black's Law Dictionary as "One by or against whom a lawsuit is brought <a party to the lawsuit>." BLACK'S LAW DICTIONARY 1231, 1232 (9th ed. 2009). A "party" is "one of the litigants in a legal proceeding; a plaintiff or a defendant in a suit."[10] WEBSTER'S UNABRIDGED DICTIONARY 1416 (2d ed. 2001). That definition is consistent

---

[9]The court clerk is to keep a record of the "names of the parties to the suit," without any suggestion that a name not be registered as a party unless he or she has been served with citation. *See* TEX. R. CIV. P. 25, 26. A judge must disqualify from a case if a "party" is related to the judge. TEX. R. CIV. P. 18b. There is no suggestion that the judge should wait to recuse until his or her relative is served with process.

[10]Consistent with this definition are definitions found in online legal sources. A "party" is a "person or entity who is the plaintiff or defendant in a lawsuit." www.legal-dictionary.org. "Party with reference to an action means a person who is described in the court of record as plaintiff or defendant. Thus, it means a person by or against whom a legal suit is brought." www.USLegal.com. A "party" is

> one of the participants in a lawsuit or other legal proceeding who has an interest in the outcome. Parties include plaintiff (person filing suit), defendant (person sued or charged with a crime), petitioner (files a petition asking for a court ruling), respondent (usually in opposition to a petition or an appeal), cross-complainant (a defendant who sues someone else in the same lawsuit), or cross-defendant (a person sued by a cross-complainant). . . .

with the longstanding definition of the term from the Texas Supreme Court stating that a "party to an action" is "one who is directly interested in the subject matter in issue, who has a right to make defense, control the proceedings, or appeal from the judgment." *Hodde v. Susan*, 58 Tex. 389, 393 (1883). None of these definitions require that one must first be served, accept or waive service, or enter an appearance before becoming a "party"; and we do not believe that to be the law or the intent of the statute in question here.

There are also legitimate practical and policy reasons that support a rule that, for these purposes, one should be recognized as a party when named in a lawsuit, even before being served with process.

The 120-day statutorily decreed period, within which an expert report must be served, starts when suit is filed, that is, when the "parties" are named, not from when they are served. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). Recognizing persons named in a pleading as parties at that time thus fits better with the overall structure of the statute and with the general sense of what a "party" is, i.e., a person named in the style of a pleading, not the redefinition of a "party" as becoming one only when served.

The arguments in this case have revealed two competing problem scenarios, both of which arise from the unstated, but not-always-correct, legislative assumption that service of process will have been accomplished before the 120-day expert-report deadline.

---

http://dictionary.law.com.

The first problem scenario is set up if one does not become a party until served with process and if service of process is not accomplished by the end of the 120-day deadline. If such is the case, as is suggested by Zanchi here, the suit must be dismissed for lack of service of the required expert report. That is a draconian result, based on an interpretation of the statute that is not clearly dictated by the statute's language and is based on dicta of doubtful derivation, as is shown above.

The alternative problem scenario arises if, as Lane suggests, one becomes a party when suit is filed or when the party is first named in a pleading, but service of process is delayed beyond the 120-day expert-report deadline. In such case, the parties are not faced with the draconian result of the first scenario, but with what is certainly a less extreme problem. Based on the statute, the defendant could have a possible deadline to object to the expert report before he or she is even obliged to answer the lawsuit.

The first scenario results in the loss of a claim. The second scenario results in a much less severe situation. Faced with the second scenario, it could be said that, since the party has not yet been served with process in the suit, there is no obligation to respond in any way until that occurs. But, even if a party who has been served with an expert report, but who has not yet been served with process, decides that, out of an abundance of caution, he or she will object to the report within the time period specified by the statute, that burden or harm is significantly less than on the claimant in the first scenario. The second scenario may be seen as an anomaly that may suggest

further legislative action, but that relatively minor anomaly should not dictate that one is not a party until served, and thus automatically require a dismissal of a claim when service of process has not been accomplished within 120 days after filing suit. That might be seen as throwing the baby out with the bath water.

The purpose of the expert report requirement is to provide a shield, a mechanism to weed out frivolous suits and not require medical defendants to spend a lot of time and money defending a frivolous case, or at least to keep that period short, i.e., a maximum of 120 days. That purpose is amply served by recognizing one as a party when he or she is named as one in a pleading rather than when, later, he or she is served with process; without the draconian result posed by the converse.

In this case, Zanchi was interested in the subject matter in issue—he was named in Lane's original petition as a defendant alleged to have committed acts of medical negligence allegedly resulting in the death of Ross. As such, Zanchi had the right to make a defense, participate in the proceedings, and appeal from any judgment rendered against him. Zanchi became a party to the underlying lawsuit when he was named in Lane's original petition filed with the district clerk.[11]

---

[11]Our determination that Zanchi was a party to the lawsuit when named in a petition duly filed with the clerk of record does not diverge from the substantive holdings in *Mapco* (judgment shall not be rendered against any defendant unless upon service, or acceptance or waiver of process, or upon an appearance), *Ross* (trial court is without jurisdiction to enter or enforce judgment against party who had neither been served nor appeared), and *Caldwell* (party who becomes aware of the proceedings without proper service of process has no duty to participate in them). Our holding does not suggest that a person or entity that has merely been sued, but not served with process, has any duty to participate in the proceedings; certainly, Zanchi had no duty to participate in the proceedings until such time as he was properly served with process.

12

Having so determined, we turn to the issue of whether Zanchi was timely served with an expert report.

It is undisputed that the expert report was to be served on or before August 19, 2010. The record indicates that Lane's attorney mailed the expert report and curriculum vitae (CV) of Jeffrey Wagner, M.D., via certified mail, return receipt requested, to Zanchi at Paris Regional Medical Center on August 19, 2010. The green card indicates these documents were signed for by Chuey Potter at Paris Regional Medical Center. Zanchi contends that Lane failed to demonstrate that Potter had the authority to accept service on Zanchi's behalf. Even so, Zanchi does not deny having received Wagner's report. Certainly, if Zanchi never received the report, such statement would have been clearly and unequivocally articulated in briefing filed on his behalf. This was not done.

In *Goforth v. Bradshaw*, 296 S.W.3d 849 (Tex. App.—Texarkana 2009, no pet.), this Court determined that "service" of expert reports and CVs means the same thing as "service" under Rule 21a of the Texas Rules of Civil Procedure. *Id*. at 853. The pivotal issue in *Goforth* was whether the Goforths' actual and direct delivery of the documents to the defendant and his counsel by regular mail, along with acknowledged receipt of those documents, amounted to "service" under Rule 21a. In holding that service was indeed accomplished under the Rule, we noted the Rule's purpose is to achieve actual notice, even when the manner of delivery was not one of those listed in Rule 21a. *Id*. at 854. Because there was actual receipt of the notice and no harm resulted from

the failure to serve the notice by registered or certified mail, we held that service was sufficient, and the lawsuit was improperly dismissed. *Id.*

In this case, Zanchi complains of a failure to prove Potter was authorized to accept service on his behalf. Because actual notice was accomplished, and no harm resulted from any alleged failure of authority on Potter's part to sign for the report, we find that service here was in compliance with Rule 21a. Zanchi contends, though, that harm resulted from the fact that the expert report was served prior to service of the lawsuit. He maintains that his rights under Section 74.351(a) of the statute will be waived if service of the expert report is authorized prior to service of the lawsuit. Section 74.351(a) requires that "[e]ach defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a).

Because Zanchi was served with the expert report before being served with process, he had no duty to participate in the proceedings. *See Caldwell*, 154 S.W.3d at 97 n.1. Absent a duty to participate in the proceedings, Zanchi was not required to file objections to the sufficiency of Wagner's report. Therefore, Zanchi did not waive his right to file objections to the report.[12] Zanchi therefore was not harmed by service of the expert report before he was served with

---

[12]Out of an abundance of caution, Zanchi may wish to do so within twenty-one days after issuance of this opinion. But we offer no opinion on this particular issue.

14

process.[13]   Because Zanchi was a party to the lawsuit at the time he was served with the expert report, and because the report was served within 120 days of filing of the lawsuit, we hold that, as a matter of law, the trial court did not err in refusing to dismiss Lane's lawsuit.

We affirm the order of the trial court.[14]


Josh R. Morriss, III
Chief Justice


CONCURRING OPINION

The Legislature has commanded that expert reports be served on a party or the party's attorney "not later than the 120th day after the date the original petition was filed."  TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West 2011).  Here, it is undisputed that Michael A. Zanchi, M.D., was served in accordance with Rule 21a within that time period.  Those facts should end the discussion, but of course it does not; Dr. Zanchi argues that he was not a "party" and/or he was not "served."

---

[13]At the dismissal hearing, counsel for Lane stated, "I think we put in our response that we certainly would not object to them having their opportunity at that point to make their objections.  We're not trying to play games here."

[14]Because we hold that Lane properly and timely served the expert report on Zanchi, a party to the lawsuit—and has therefore complied with the statute—we do not reach the issues of whether a due diligence exception exists that might forgive a lack of compliance by Lane or whether Lane would qualify for such an exception.

15

The first argument presented here is that this service of the expert report is not valid because Dr. Zanchi was not a "party," even though the petition had been filed naming him as such. Chief Justice Morriss has fully explained that the case apparently relied on by some courts for that proposition, *Mapco*,[15] does not hold that service of process must be completed before the defendant qualifies as a party. His opinion further contains a logical and coherent explanation of this issue. This Court is unanimous on this issue—Dr. Zanchi was a party. I fully agree with the analysis by the Chief Justice and see no need for further elaboration.

The dissenting opinion opines that Dr. Zanchi was not "served" with the expert report even though it was addressed and mailed to him by certified letter and received at the hospital where the alleged negligence occurred. The Legislature, while giving many mandates in this statute, failed to define the word "serve" as it relates to the expert report. This Court and many others, having no statutory guidance, have concluded compliance with Rule 21a of the Texas Rules of Civil Procedure is the most logical and consistent manner that should be employed in deciding if the

---

[15]*Mapco, Inc. v. Carter*, 817 S.W.2d 686 (Tex. 1991) (per curiam). The Texas Supreme Court stated that the issue in *Mapco* was "whether a judgment may be entered against a party, not before the trial court." *Id.* at 686. The plaintiffs sued Mapco Underground Storage of Texas, Inc. (MUST) for waste and to partition a mineral estate. Mapco, Inc., was a separate legal entity. From the discussion in the opinion, it is clear that Mapco, Inc., was never named as a party to the lawsuit ("the Carters' pleadings identified only MUST as a party . . . "), *Id.* at 687, but a judgment was entered against Mapco, Inc. The holding of the Texas Supreme Court was simply that Mapco, Inc. (not MUST) was never named as a party in the proceeding, did not voluntarily appear, and therefore, any judgment against it was erroneous. In the appellant's brief, the following statement is made: "Merely being named in a petition as a defendant does not make one a 'party' to the lawsuit." The *Mapco* case is the only cited authority for that proposition. After carefully reading the *Mapco* case, we cannot find any such statement; *Mapco*'s holding is that a judgment cannot be rendered against a corporation that was never named or appeared as a party, but *Mapco* does not give any support to the appellant's statement that "being named in a petition as a defendant does not make one a 'party' to the lawsuit." We call this major improper attribution to the attention of counsel and remind counsel of the duty of candor to the court.

report was served. *Goforth v. Bradshaw*, 296 S.W.3d 849, 853 (Tex. App.—Texarkana 2009, no pet.) ("Under Section 74.351 of the Texas Civil Practice and Remedies Code, 'service' of expert reports and CVs means the same thing as 'service' under Rule 21a of the Texas Rules of Civil Procedure.") (citing *Amaya v. Enriquez*, 296 S.W.3d 781, 783 (Tex. App.—El Paso 2009, pet. denied); *Poland v. Ott*, 278 S.W.3d 39 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez*, 237 S.W.3d 869, 872 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *Herrera v. Seton Nw. Hosp.*, 212 S.W.3d 452, 459 (Tex. App.—Austin 2006, no pet.); *Kendrick v. Garcia*, 171 S.W.3d 698, 704 (Tex. App.—Eastland 2005, pet. denied)).

Citing no authority, the dissenting opinion posits that serving an expert report is not governed by Rule 21a unless the defendant has previously been served with citation; no other suggestion or definition is proposed, only that Rule 21a should not be used. One reason for the employment of Rule 21a is to avoid the classic "he said - she said" argument about whether the report was served or received. That Rule provides standards and makes service complete when the document is properly addressed, stamped, and sent by registered or certified mail to the last known address. Certifying that action was taken provides prima facie evidence of service, subject to presentation of evidence of nonreceipt. Here, an affidavit is in the clerk's file evidencing that the report was properly addressed and sent by certified mail to Dr. Zanchi at the Paris Regional Medical Center. A receipt showed that the document was received at the hospital, and Dr. Zanchi

did not attempt to present contrary evidence. Based on this information, the report was served on Dr. Zanchi. Very simply, within 120 days from filing the original petition against Dr. Zanchi, he was served with the expert report in compliance with the statute.

The dissent argues that appellate courts have held that service of citation on one other than the addressee is defective, but the cited cases involve the service of citation, not notices. This distinction makes all the difference in the world. Citation must be served in strict accordance with the statutes, rules, and court imposed regulations because it is the manner in which a court acquires jurisdiction of a party; without strict compliance the courts will not allow a default judgment to stand. *Hubicki v. Festina*, 226 S.W.3d 405, 408 (Tex. 2007). Rule 21a specifically states that it governs notices and other documents "other than the citation to be served upon filing of a cause of action." So the cases cited for the proposition that strict compliance by serving the addressee only in serving citation, are not relevant to the issue in this case.

Finally, I will respond to the dissenting opinion that allowing service of the expert report before citation has been completed requires the defendant to file an objection to the expert report before having the duty to respond to the suit itself. The question seems to answer itself; if the trial court has not acquired jurisdiction of the defendant, that party is not required to do anything, including submitting an objection to the expert report. When the court does obtain jurisdiction, by the proper service of citation, just as the defendant has to answer the suit, likewise the time begins to run on filing of the objections to the report. The trial court could not require the

defendant to file an objection before it acquired jurisdiction. In essence, receiving the expert report prior to service of citation places the defendant in the same position as if the citation and expert report were served simultaneously. *See Stroud v. Grubb*, 328 S.W.3d 561 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (expert report filed one day after serving citation). In this instance, the defendant, after being served with citation, had the opportunity to file an objection to the expert report, but instead he attempted to persuade the trial court that he was not a party or he was not served. Just as in *Stroud* where the defendant was served one day after the citation was served, Dr. Zanchi had twenty-one days to challenge the report. In failing to do so, Dr. Zanchi waived any objection. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). So to that extent, I disagree with Chief Justice Morriss' opinion that Dr. Zanchi may now object. That objection has been waived.

The Legislature determined that expert reports must be filed in order to avoid costly, unnecessary, and unmerited legal proceedings, but unfortunately, in this case, that goal has not been accomplished. Here, a thirty-one-page detailed report from a board-certified anesthesiologist was served within 120 days from the filing of the original petition. Instead of engaging in expensive and time-consuming trial and appellate litigation attempting to establish that the simple words "party" and "serve" have abstruse meanings, these parties should be preparing for and trying their case.

I concur with the result reached in the opinion of the Chief Justice.

19

Jack Carter
Justice


DISSENTING OPINION

Although I concur with the majority's scholarly determination that a person becomes a "party" to a lawsuit when he is named as such in a petition filed with a court (as opposed to when that person is served with citation), I cannot agree with some of the other determinations made to arrive at the majority conclusion. I also feel it advisable to address potentially-determinative arguments not mentioned in the majority opinion.

**"Service" of Report Pursuant to Rule 21a?**

The first concern lies with the claim by Zanchi[16] that there was no expert report served on him pursuant to Section 74.351(a) of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2011). The primary thrust of Zanchi's argument is based upon his definition of "party," a position which, as mentioned above, has little merit. However, Zanchi does mention (and the record supports) that at the time of the supposed service of the expert report, he had no obligation to respond because he had neither voluntarily filed a response nor had he been served with citation pursuant to Rule 106 of the Texas Rules of Civil Procedure or any alternate means of citation. TEX. R. CIV. P. 106.

The predecessor of Chapter 74 of the Texas Civil Practice and Remedies Code was Article 4590i. This now-repealed and replaced statute, while requiring an expert report to be obtained by a health care liability claimant, used the term "furnish" when speaking of delivery of a copy of that report to the defendant. TEX. REV. CIV. STAT. ANN. art. 4590i, § 13.01(d), *repealed by* Act of May 16, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 74.001 (West 2011)). The current statute requires that claimant "serve" a copy of the expert report on the defendant. The question then arises as to whether sending a copy of the expert report to Paris Regional Medical Center (where Zanchi served on the staff) by certified mail before he had been served with citation and before he had an

---

[16]The appellants here are treated as singular under the name "Zanchi" in the singular. Reference to the appellee is made as "Lane."

21

obligation to respond to the suit complied with the obligation to "serve" him with a copy of the report within 120 days of the filing of the suit. This is compounded by questions of whether the certified mail receipt, signed by someone not proven to have the capacity to receive service on behalf of Zanchi, was sufficient evidence to establish a presumption that the report was served on him.

A number of intermediate appellate courts (including this Court) have determined that the term "serve" as used in the statute is tantamount to service pursuant to Rule 21a, Texas Rules of Civil Procedure. *Goforth v. Bradshaw*, 296 S.W.3d 849, 853 (Tex. App.—Texarkana 2009, no pet.); *Amaya v. Enriquez*, 296 S.W.3d 781, 783 (Tex. App.—El Paso 2009, pet. denied); *Poland v. Ott*, 278 S.W.3d 39 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez*, 237 S.W.3d 869, 872 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Herrera v. Seton Nw. Hosp.*, 212 S.W.3d 452, 459 (Tex. App.—Austin 2006, no pet.); *Kendrick v. Garcia*, 171 S.W.3d 698, 704 (Tex. App.—Eastland 2005, pet. denied). Compliance with "Rule 21a sets up a presumption that when notice of trial setting properly addressed and postage prepaid is mailed, that the notice was duly received by the addressee." *Cliff v. Huggins*, 724 S.W.2d 778, 780 (Tex. 1987); *see also Mathis v. Lockwood*, 166 S.W.3d 743, 745 (Tex. 2005) (per curiam). It stands to reason, then, that the purpose of Rule 21a is to achieve actual notice and to set up presumptions to use in disputes about whether notice was achieved. *See Netherland v. Wittner*, 662 S.W.2d 786, 788 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.); *Hill v. W.*

22

*E. Brittain*, *Inc*., 405 S.W.2d 803, 807 (Tex. Civ. App.—Fort Worth 1966, no writ). Under that rationale, in some circumstances (when it was proven that despite variance between the means of effective service under Rule 21a, the defendant nonetheless actually received a copy of the report within the statutory 120-day period) when that proof was made, it was deemed that sufficient compliance with the requirement of service of the report was made. *See Goforth*, 296 S.W.3d at 854; *Spiegel v. Strother*, 262 S.W.3d 481 (Tex. App.—Beaumont 2008, no pet.). There is no mention in any of those cases, however, that the service or delivery of the expert report was made before service of citation on the defendant had been achieved or before a voluntary appearance had been made. Presumably, the case before us is unique in the fact that the report was transmitted and received (by someone) after the suit was filed, but before the defendant was either served with citation or had appeared.

Note that when the expert report was sent by certified mail to the hospital where Zanchi commonly worked, the postal receipt was signed by someone whom no one identified as being the authorized agent for Zanchi. In service of citation, the appellate courts have almost unanimously ruled that when there is service by certified mail, if the return receipt is not signed by the addressee, the service of process is defective. *See Sw. Sec. Servs.*, *Inc. v. Gamboa*, 172 S.W.3d 90, 93 (Tex. App.—El Paso 2005, no pet.) (service defective when return receipt signed by someone other than addressee); *Ramirez v. Consol. HGM Corp*., 124 S.W.3d 914, 916 (Tex. App.—Amarillo 2004, no pet.); *All Commercial Floors*, *Inc. v. Barton & Rasor*, 97 S.W.3d 723,

23

727 (Tex. App.—Fort Worth 2003, no pet.); *Keeton v. Carrasco*, 53 S.W.3d 13, 19 (Tex. App.—San Antonio 2001, pet. denied); *Webb v. Oberkampf Supply of Lubbock*, *Inc.*, 831 S.W.2d 61, 64 (Tex. App.—Amarillo 1992, no writ); *Am. Universal Ins. Co. v. D.B.&B.*, *Inc.*, 725 S.W.2d 764, 765–67 (Tex. App.—Corpus Christi 1987, writ ref'd n.r.e.); *Pharmakinetics Labs.*, *Inc. v. Katz*, 717 S.W.2d 704, 706 (Tex. App.—San Antonio 1986, no writ). Certainly, these cases deal with attempts at service of citation and not with service of other papers under Rule 21a and a distinction can be made there. There is, however, a good reason to equate the application of these citation cases to an attempt to employ Rule 21a to situations in which the defendant has yet to have the responsibility to answer: once a person has been served with citation or has voluntarily appeared, there is a proven address to which such notices can be sent. In other words, the address for service under Rule 21a would be either that at which he was already successfully served or at some alternate address designated later by him in pleadings (such as the address of his attorney). It appears that this attempt to achieve service of a medical expert report under Rule 21a in a health care liability case prior to achieving service of citation may well be a case of first impression. The concurrence points out that there are no cases cited here to support the proposition that the same requirements as to service pertaining to service of citation would apply equally to the service of an expert report to an as-yet-unserved defendant. Because the circumstance here is thus far apparently unique, there are likewise no cases which can be cited to rebut that position, either.

24

One could liken the pre-citation service of the expert report in a health care liability suit pursuant to Rule 21a prior to the time that a defendant has a duty to respond to the pre-citation service of requests for admissions. As the Texas Rules of Civil Procedure currently stand, such requests may be served on another party no later than thirty days before the end of the discovery period. TEX. R. CIV. P. 198.1. The person receiving those requests for admissions would have thirty days after receipt of the requests to respond to them (fifty days if service of the requests are achieved before the defendant's answer date) or the requests can be deemed admitted without the necessity of a court order. TEX. R. CIV. P. 198.2.[17] Would it be effective to serve requests for admissions on a defendant pursuant to Rule 21a of the Texas Rules of Civil Procedure before they were ever served with citation, wait fifty days, and deem the requests admitted before the defendant was required to file an answer in the lawsuit? One would hardly think so. The Rules pertaining to requests for admission are written in contemplation either that the party from whom responses are requested is already "before the court" or that the requests would be served in the same manner as citation.

Rule 21a service should apply only after the party is actually before the court, either by compliance with the Rules pertaining to service of citation (e.g., Rule 107, Texas Rules of Civil Procedure) or by voluntary appearance. Here, we had neither of these circumstances at the time

[17]In *Steffan v. Steffan*, 29 S.W.3d 627, 630 (Tex. App.—Houston [14th Dist.] 2000, pet. denied), it was determined that after a person has been served with citation and after that person has attended a hearing and made a pro se approval of temporary orders, it is not required that he file a responsive answer before he has the obligation to respond to requests for admissions or risk having them deemed admitted.

the expert report was mailed to Zanchi at the hospital. In these circumstances, there was neither service of citation on him at some situs nor any pleading filed by Zanchi which nailed down the proper address for the transmission of such notices (such as the office address of his attorney); the certified mail receipt was signed by some person whose relationship to Zanchi remains unidentified. Should this ploy work to establish a prima facie case that Zanchi was "served" with it? That would be the result if Rule 21a is permitted to apply under these circumstances.

Since Zanchi had not already been put in the position of being imposed with an obligation to respond to anything in the suit, Rule 21a should not apply to service of the expert report. Because Rule 21a was never intended to apply under the circumstances we have here, there was no "service" of the expert report on Zanchi within the prescribed 120-day time period prescribed by the statute, nor was it served in such a manner as to suffice to meet the statutory requirement.

I would rule that the attempt at service pursuant to Rule 21a before Zanchi had an obligation to respond was ineffective.

**Due Diligence Exception?**

Lane also argued that the time requirements of Section 74.351(a) of the Texas Civil Practice and Remedies Code do not apply if he demonstrates that due diligence was pursued in unsuccessful attempts to serve Zanchi with citation. In doing so, Lane apparently relies on a discussion of the due diligence doctrine in *Stockton v. Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011). In *Stockton*, the Texas Supreme Court explains that under the due diligence doctrine, "a

26

plaintiff, who files a petition within the limitations period but does not complete service until after the statutory period has expired, is entitled to have the date of service relate back to the date of filing, if the plaintiff has exercised diligence in effecting service." *Id.* The majority does not address this argument.

The problems with reliance on *Stockton* for the proposition that the due diligence doctrine does apply and, thus, potentially exculpates Lane from the harsh consequences of the statute are twofold: (1) although the supreme court discusses and explains the doctrine, it neither actually applies the due diligence doctrine to abrogate the dictates of the statute nor affirmatively holds that it should not apply; (2) after examining the circumstances and the trial court's finding that the due diligence exception did apply, it rejected the notion that "a fact issue was raised concerning . . . due diligence in the matter" and made a judicial determination that due diligence had not been shown. *Id.* at 617.

It is notable here that Lane made absolutely no attempt at personal service citation on Zanchi until about forty days after the suit was filed. Lane showed that the process server made unsuccessful attempts on four occasions in June to personally serve Zanchi at his home. Even though the process server was aware that Zanchi was a hospital-based physician at Paris Regional Medical Center, he attempted personal service citation only at Zanchi's home, never attempting to serve Zanchi with citation at the hospital. Lane also showed that his attorney relied upon a paralegal's mistaken representation that Zanchi had, in fact, been served with citation; however,

27

there is no explanation given by Lane for inactivity in attempts to get service during the lapse of time between the last attempt by the process server to effect service on Zanchi at his home (June 21) and the paralegal's mistaken representation that Zanchi had been served (August 10). No motion for substituted service was filed with the trial court until after the 120-day period for the service of the expert report had already expired. Personal service citation was finally served when the process server located Zanchi exiting his home when the process server was attempting to serve a substituted process. What this does not take into account is that Lane's attorney, apparently realizing that the 120-day period for serving the expert report loomed like the messenger of death, did not send the expert report to Zanchi's home (where all attempts at service of citation had been made), but to the hospital where he worked. The majority has found this service of the expert report was effective. Many people work during the day and would be absent from their homes. It appears oxymoronic for this Court to make a finding that service of the expert report on Zanchi pursuant to Rule 21a was effective when it was sent by certified mail addressed to him at the hospital address (this apparently having been construed by Lane as Zanchi's "last known address" so as to comply with Rule 21a), yet fail to address the issue of due diligence when no effort was made to serve Zanchi—either by personal service or by certified mail—at the hospital address. Due diligence would have dictated that service of the citation and the expert report would have been attempted at the place of Zanchi's employment promptly after efforts were unsuccessful at his home. As to the erroneous representation to Lane's attorney that

28

Zanchi had actually been personally served with citation, the error of the paralegal amounts to error by Lane's lawyer and would not provide grist for the claim of due diligence.

Lane has failed to show facts necessary to support a due diligence claim as a matter of law.

**Statutory Construction?**

The third point relates to the difficulty of reconciling the statute to the procedures to be followed once one allows the service of the expert report before service of citation on the defendant.

The relevant statute reads as follows:

> In a health care liability claim, a claimant shall, *not later than the 120th day after the date the original petition was filed*, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties. Each defendant physician or health care provider whose conduct is implicated in a report must *file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served*, failing which all objections are waived.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West 2011) (emphasis added).

This sets out two critical times, one for the service of the expert report by the claimant and one for the filing of service of objections to that report by the physician or health care provider.

If one, for instance, employs the due diligence exception to stall the requirement, then the health care provider who has been served with the expert report (but who has no obligation to respond to the lawsuit) must file his objections to the expert report before he has the duty to

29

respond to the suit itself. The answer proposed by Lane to that dilemma is to apply a "relate back" time to extend the time for filing objections to the time the defendant must file an answer to the suit in chief.

If the relate back time is used, this not only impacts the date that service of the expert report must be delivered, it also dictates that the statutory time for filing objections to the report be likewise amended. Accordingly, if a court unilaterally tampers with the statutory deadline for the service of the expert report, in a circumstance like this it must also extend the time for lodging objections to it; otherwise, the time permitted for lodging objections to the report would be nullified. Accordingly, in order to do so, the court extending deadlines must rewrite the statute in an additional cogent spot.

In *Stockton*, the Texas Supreme Court acknowledged that difficulty can arise because of the way the statute is written. After making that observation, however, the supreme court stated that "[t]he Legislature, however, has chosen to commence the 120-day period from the date of filing, and 'we are not free to rewrite the statutes to reach a result we might consider more desirable, in the name of statutory construction.'" *Stockton*, 336 S.W.3d at 619 (citing *Pub. Util. Comm'n of Tex. v. Cofer*, 754 S.W.2d 121, 124 (Tex. 1988)).

A court's primary objective in construing statutes is to give effect to the Legislature's intent. *Galbraith Eng'g Consultants*, *Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). The plain meaning of the text is the best expression of legislative intent unless a different meaning is

apparent from the context or the plain meaning leads to absurd or nonsensical results. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008).

Words can be vague and may have multiple shades of meanings, even completely opposite meanings (e.g., ravel, adjure, avocation, and inure). Even though the word "filed" may have different meanings in other contexts, in the context of Section 74.351, it has only one. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351. In that context, it means the date that the suit has been instituted against the health care provider; that can only mean that the claimant has 120 days from the date that the medical provider was made a defendant in the suit to serve the expert report.

To be sure, the way the Legislature drafted this legislation presents a potentially onerous (and, possibly, even ruinous) burden on a claimant against a physician or other health care provider in dictating the time that an expert report must be served on the defendant. It is, however, not a necessarily impossible burden.

The courts of appeals are obligated to follow the determinations of the Texas Supreme Court in determining the law. *See In re K.M.S.*, 91 S.W.3d 331 (Tex. 2002). Given the strict adherence to the principles the Legislature laid down in adopting the Medical Liability law (TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001–.507 (West 2011)), if it will determine that a suit arising after a spider bite is a health care liability claim,[18] it will also determine that Lane failed to meet the obligation in serving Zanchi with the expert report as required.

---

[18] *Omaha Healthcare Ctr., LLC v. Johnson*, No. 08-0231, 2011 Tex. LEXIS 506 (Tex. July 1, 2011).

Due to these reasons, I would rule that the expert report was not served on Zanchi in accord with the statute and direct the dismissal of Lane's suit.


Bailey C. Moseley
Justice

Date Submitted:      June 29, 2011
Date Submitted:      September 1, 2011