# IN THE SUPREME COURT OF TEXAS

════════════

No. 11-0826

════════════

MICHAEL A. ZANCHI, M.D., MICHAEL A. ZANCHI, M.D., P.A., AND PARIS
REGIONAL ANESTHESIA, P.A., PETITIONERS,

v.

REGINALD KEITH LANE, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF
THE ESTATE OF JUAMEKA CYNARRA ROSS, DECEASED, ET AL., RESPONDENTS

═══════════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SIXTH DISTRICT OF TEXAS

═══════════════════════════════════════════════════════

**Argued January 8, 2013**

JUSTICE LEHRMANN delivered the opinion of the Court.

JUSTICE HECHT filed a concurring opinion.

"In a health care liability claim, a claimant shall, not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports . . . ." TEX. CIV. PRAC. & REM. CODE § 74.351(a). Today we determine whether a claimant asserting a health care liability claim (HCLC) complies with section 74.351(a)'s mandate to serve an expert report on a "party" by serving the report on a defendant who has not yet been served with process. Because we construe the term "party" in section 74.351(a) to mean one named in a lawsuit, we hold that he does. We further hold that "service" of an expert report on such a defendant need

not comport with the service requirements in Rule 106 of the Texas Rules of Civil Procedure that apply specifically to service of citation. Accordingly, we affirm the judgment of the court of appeals.

## I. Factual and Procedural Background

Juameka Cynarra Ross died after undergoing a splenectomy at Paris Regional Medical Center (the Hospital) in Paris, Texas. On April 21, 2010, Reginald Keith Lane, individually and as personal representative of Ross's estate, filed suit under the Texas Medical Liability Act (TMLA) against anesthesiologist Michael A. Zanchi, M.D., alleging that Zanchi's medical negligence resulted in Ross's death. It is undisputed by the parties that Zanchi was not served with process until September 16, 2010. Lane attributes this delay, at least in part, to Zanchi's conduct, arguing that Zanchi actively evaded service. In the meantime, however, Lane mailed the expert report and curriculum vitae of Jeffrey Wagner, M.D., to Zanchi at five different locations (including the Hospital) by certified mail on August 19, 2010, which was the statutory deadline for serving the report. Four of the mailings were returned unclaimed, but a Chuey Potter signed for the mailing sent to the Hospital. The record does not reflect Zanchi's relationship to Potter, and Zanchi has neither admitted nor denied receiving Wagner's report.

Zanchi filed a motion to dismiss the suit for failure to timely serve an expert report as required by section 74.351(a) of the Texas Civil Practice and Remedies Code. At the hearing on the motion to dismiss, Zanchi specifically argued that he was not a "party" to Lane's suit until he was served with process, so any transmittal of Wagner's report to him before the date on which he was served could not satisfy section 74.351(a). Zanchi did not file any objections to the substance of the expert report. The trial court denied Zanchi's motion to dismiss. The court of appeals, with one

2

justice concurring and one justice dissenting, affirmed, holding that "one is a 'party' if so named in a pleading, whether or not yet served [with process]." 349 S.W.3d 97, 100.

## II. The Expert-Report Requirement and Applicable Legal Standards

In order to proceed with an HCLC, a claimant must comply with the expert-report requirement of the TMLA. *See* TEX. CIV. PRAC. & REM. CODE § 74.351; *Stockton v. Offenbach*, 336 S.W.3d 610, 614 (Tex. 2011). Section 74.351(a) provides that "[i]n a health care liability claim, a claimant shall, not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports." TEX. CIV. PRAC. & REM. CODE § 74.351(a). Strict compliance with that provision is mandatory. *Stockton*, 336 S.W.3d at 614. If the claimant does not serve an expert report by the statutory deadline and the parties have not agreed to extend the deadline, the statute requires, with one exception not relevant here, dismissal of the claim with prejudice "on the motion of the affected physician or health care provider." TEX. CIV. PRAC. & REM. CODE § 74.351(b).

Matters of statutory construction are legal questions that we review de novo. *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012). "The aim of statutory construction is to determine and give effect to the Legislature's intent, which is generally reflected in the statute's plain language." *CHCA Woman's Hosp., L.P. v. Lidji*, __ S.W.3d __, __ (Tex. 2013). A word's meaning cannot be determined in isolation, but must be drawn from the context in which it is used. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011).

3

### III. Discussion

### A. The Meaning of "Party" under the TMLA

In his first issue, Zanchi argues that a defendant is not a "party" to an HCLC until he is served with process, waives service, or otherwise appears in a lawsuit. He contends that he did not become a "party" to this lawsuit until September 16, 2010, the day Lane served him with process. As a result, Zanchi argues, Lane did not comply with the requirement in section 74.351(a) that he serve the expert report on a "party" within 120 days of filing suit, and the trial court was required to dismiss Lane's suit. We disagree. We conclude that, in the context of the TMLA, the term "party" means one named in a lawsuit and that service of the expert report on Zanchi before he was served with process satisfied the TMLA's expert-report requirement.

The TMLA does not define the term "party," but provides that "[a]ny legal term or word of art used in this chapter, not otherwise defined in this chapter, shall have such meaning as is consistent with the common law." TEX. CIV. PRAC. & REM. CODE § 74.001(b). This Court has never directly addressed the meaning of the term "party" in the context of the TMLA's expert-report requirement. However, we have stated that "because [a health care provider] was *named in the original petition as a party to this suit*, the [claimants] were required to serve it with a report before the statutory period expired," indicating that one becomes a "party" to an HCLC when named in the lawsuit. *Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671 (Tex. 2008) (emphasis added). In addition, we have tacitly recognized in other contexts that one can be a "party" to a legal proceeding even though he is not served with process. *See, e.g.*, *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012) ("If service is invalid, it is 'of no effect' and cannot establish the trial court's jurisdiction over a

4

party."); *Ross v. Nat'l Ctr. for the Emp't of the Disabled*, 197 S.W.3d 795, 796–98 (Tex. 2006) (holding that the "trial court had no jurisdiction either to enter judgment or to enforce it against a party who had neither been properly served nor appeared" and that "the court of appeals erred in finding that a party never served can challenge a default judgment only if he first complies with it"); *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 674 (Tex. 2004) (stating that the "remaining party was never served with citation"); *Caldwell v. Barnes*, 154 S.W.3d 93, 97 n.1 (Tex. 2004) ("A party who becomes aware of the proceedings without proper service of process has no duty to participate in them."). These cases confirm that a person can be a "party" to a lawsuit even though, not having been served with process, the person has no duty to participate in, and may not be bound by, the proceedings. We must presume that the Legislature was aware of our construction of the term in enacting the TMLA. *Tooke v. City of Mexia*, 197 S.W.3d 325, 361 (Tex. 2006).

Five courts of appeals have previously considered the question of when a defendant becomes a "party" under section 74.351(a), but, unlike the court of appeals here, they all determined that "party" means one who has been named in an HCLC and served with citation and a copy of the petition, accepted or waived such service, or made an appearance. *Key v. Muse*, 352 S.W.3d 857, 860–64 (Tex. App.—Dallas 2011, no pet.); *Carroll v. Humsi*, 342 S.W.3d 693, 701 (Tex. App.—Austin 2011, no pet.); *Dingler v. Tucker*, 301 S.W.3d 761, 766–68 (Tex. App.—Fort Worth 2009, pet. denied); *Carreras v. Zamora*, 294 S.W.3d 348, 350 (Tex. App.—Corpus Christi 2009, no pet.); *Yilmaz v. McGregor*, 265 S.W.3d 631, 640 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). As explained by the court below, in espousing that definition of "party," those courts of appeals relied principally on *Mapco, Inc. v. Carter*, 817 S.W.2d 686 (Tex. 1991) (per curiam), for

the common-law formulation of that definition.[1]  349 S.W.3d at 101.  Such reliance is misplaced. We recognized in *Mapco* that a party must be served, accept or waive service, or otherwise appear before judgment may be rendered against him.  *Mapco*, 817 S.W.2d at 687.  The concept of personal jurisdiction, however, is distinct from the concept of party status.  Rendering judgment against a party who has not yet been served with process, accepted or waived service, or otherwise appeared raises due process concerns that are not implicated when serving a defendant with an expert report. *See Omni Capital v. Rudolf Wolff & Co.*, 484 U.S. 97, 103–04 (1987) (stating that, as a matter of due process, before a court may exercise personal jurisdiction over a defendant the procedural requirement of service of summons must be satisfied).  Indeed, our interpretation of "party" does not prejudice the defendant; rather, it gives the defendant advance notice of the pending lawsuit and the alleged conduct at issue.  Moreover, nowhere in *Mapco* did we even attempt to define the word party.  Zanchi does not point to any other case law, and we can find none, holding that service of process is generally a prerequisite to "party" status.

Recognizing a person named in a filed pleading as a "party" is consistent with dictionary definitions of the term as well as the Texas Rules of Civil Procedure.  Black's Law Dictionary defines "party" as "[o]ne by or against whom a lawsuit is brought <a party to the lawsuit>," BLACK'S LAW DICTIONARY 1231–32 (9th ed. 2009), and Webster's International Unabridged Dictionary defines party as "the plaintiff or defendant in a lawsuit," WEBSTER'S INT'L DICTIONARY UNABRIDGED 1648 (3d ed. 2002).  Further, the pleading rules in the Texas Rules of Civil Procedure

---

[1] That is, these opinions either cite to *Mapco* or reference other opinions that themselves rely on *Mapco*.

6

refer to those named in petitions as "parties," supporting a conclusion that service of process is not a prerequisite to that designation. TEX. R. CIV. P. 79 (requiring that a petition list the "parties").

Not only does construing "party" to mean someone named in a lawsuit better comport with the common usage of the term, this construction is particularly persuasive under the TMLA, where "defendant"—a type of party—is statutorily defined as a "physician or health care provider against whom a health care liability claim is asserted," without regard to whether the physician or provider has been served. TEX. CIV. PRAC. & REM. CODE § 74.351(r)(4). This construction also makes sense given that the statutory period to serve an expert report runs from the date of filing the suit, not the date on which citation is served. *Id.* § 74.351(a); *see also Stockton*, 336 S.W.3d at 618–19 (explaining that the purpose of the TMLA would not be frustrated if the Legislature had calculated the expert report deadline from the date of a provider's service or appearance, but that the Legislature chose not to do so). Beginning the period for serving an expert report on the date of filing suggests that a "party" on which to serve the report exists on the date of filing.

Significantly, interpreting "party" to mean one named in the lawsuit best effectuates the purpose of the TMLA, which is "to identify and eliminate frivolous [HCLCs] expeditiously, while preserving those of potential merit." *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011) (citing Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11(b)(1), (3), 2003 Tex. Gen. Laws 847, 884); *see also Leland v. Brandal*, 257 S.W.3d 204, 208 (Tex. 2008) (noting that in "section 74.351, the Legislature struck a careful balance between eradicating frivolous claims and preserving meritorious ones"). Defining "party" as one named in the lawsuit, then, does not affect the expert report deadline; it still falls on the 120th day after the original petition is filed. In turn, failure to meet that

7

deadline will result in dismissal of the claim under section 74.351(b). Accordingly, our interpretation ensures that meritorious claims remain viable, while frivolous claims are eliminated quickly, by requiring an expert report early in the proceeding.

We turn next to the implications of our interpretation on the objection provision of section 74.351(a), which states that a defendant "whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived." TEX. CIV. PRAC. & REM. CODE § 74.351(a). Zanchi argues that interpreting "party" as one named in the lawsuit could create a scenario in which a defendant physician is required to file and serve his objections before he is served with process or otherwise brought under the court's jurisdiction. The court of appeals held that the objection provision is not implicated until the defendant has an obligation to take part in the proceedings and that, as a result, the twenty-one-day objection period does not begin to run until the defendant is served with process. 349 S.W.3d at 102–03. We agree. *See, e.g.*, *Ross*, 197 S.W.3d at 798 ("While diligence is required from properly served parties or those who have appeared, . . . those not properly served have no duty to act, diligently or otherwise."); *Caldwell*, 154 S.W.3d at 97 n.1 (noting that a party has no duty to participate in a proceeding until served with process). While the statute does not expressly provide for tolling the objection period, neither does it expressly insert a 120-day deadline for service of process in an HCLC, which is the practical effect of Zanchi's interpretation. Because the statute does not appear to contemplate the exact factual scenario presented here, neither party's

8

interpretation is without its shortcomings,[2] but the construction we adopt here best fits the common usage of the term "party," does the least damage to the statutory language, and best comports with the statute's purpose. *See Gardner*, 274 S.W.3d at 671 (holding, in the default judgment context, that the defendant's failure to appear after proper service of citation tolled the 120-day time period for serving an expert report until the defendant made an appearance).

While we agree with the court of appeals' majority opinion that Zanchi's twenty-one-day period for objecting to the report did not begin to run until he was served with process, we also agree with the concurring opinion that Zanchi's opportunity to raise any objections to the substance of the expert report has passed. *See* 349 S.W.3d at 107. Zanchi could have objected within twenty-one days of service of process and, at the time he was served, had already had the expert report for over twenty-one days. He thus had ample opportunity to prepare his objections, but failed to raise them.[3]

---

[2] By contrast, section 74.351(a) was recently amended to change the expert-report deadline to run from the date on which the defendant's answer is filed, rather than from the date on which the petition is filed. Act of May 26, 2013, 83d Leg., R.S., ch. 870, § 2, __ Tex. Gen. Laws __, __. The amendment also changes the defendant's deadline to object to the report to twenty-one days after the later of the date the report is served or the date the defendant's answer is filed. *Id*. Specifically, the amended statute provides:

> In a health care liability claim, a claimant shall, not later than the 120th day after the date each defendant's original answer is filed, serve on that party or the party's attorney one or more expert reports .... Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the later of the 21st day after the date the report is served or the 21st day after the date the defendant's answer is filed, failing which all objections are waived.

*Id*. The amendment does not take effect until September 1, 2013, and thus does not affect this case. *Id*. at ___. However, we note that, under the amended statute, a claimant asserting a health care liability claim will never be required to serve an expert report before the defendant is served with process, waives service, or otherwise appears in the lawsuit.

[3] Neither claimants nor defendants are prejudiced under our interpretation of "party." A claimant with a meritorious claim will not be deprived of his day in court based on a technicality or the gamesmanship of the defendant, and a defendant will always have at least twenty-one days to formulate his objections.

## B. Method of Service of Expert Report

In Zanchi's second issue, he argues that in order to "serve" an expert report on a defendant who has not yet been served with process, the claimant must comply with the service-of-citation requirements under Texas Rule of Civil Procedure 106. We disagree. Rule 106 by its terms applies solely to service of citation. TEX. R. CIV. P. 106. If the Legislature had intended to require a claimant to serve an expert report in accordance with Rule 106, it clearly knew how to do so. *See, e.g.*, TEX. CODE CRIM. PROC. art. 59.04(b) (requiring that, to institute civil forfeiture proceedings, the state's attorney "shall cause certified copies of the notice to be served . . . in the same manner as provided for the service of process by citation in civil cases"). We need not decide whether service in a manner other than that authorized by Rule 21a satisfies the TMLA's requirement to "serve" an expert report because, here, Zanchi does not dispute either that Lane sent the expert report on the statutory deadline, via certified mail,[4] or that Zanchi actually received the expert report.[5] *See* TEX. R. CIV. P. 21a.

---

[4] Rule 21a of the Texas Rules of Civil Procedure authorizes service by one of four methods of delivery: (1) in person, by agent, or by courier receipted delivery; (2) by certified or registered mail to the party's last known address; (3) by telephonic document transfer to the recipient's current telecopier number; or (4) by such other manner as the court in its discretion may direct. TEX. R. CIV. P. 21a; *see also Stockton*, 336 S.W.3d at 615. Several courts of appeals have interpreted the word "serve" in section 74.351(a) to require compliance with Rule 21a. *See, e.g., Breiten v. Shatery*, 365 S.W.3d 829, 832 (Tex. App.—El Paso 2012, no pet.); *Nexion Health at Beechnut, Inc. v. Paul*, 335 S.W.3d 716, 718 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez*, 237 S.W.3d 869, 872 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Herrera v. Seton Nw. Hosp.*, 212 S.W.3d 452, 459 (Tex. App.—Austin 2006, no pet.); *Kendrick v. Garcia*, 171 S.W.3d 698, 703–04 (Tex. App.—Eastland 2005, pet. denied). Zanchi assumes that, if Rule 106 does not apply, then Rule 21a does.

[5] Zanchi generally states that it is "questionable whether the [expert] report was 'served' on Zanchi under Rule 21a." Without more detail, this argument is not preserved.

## IV. Conclusion

For the foregoing reasons, we conclude that, under section 74.351(a) of the TMLA, a physician or health care provider against whom an HCLC is asserted is a "party" who may be served with an expert report regardless of whether he has been served with process. We further hold that an expert report need not be "served" in compliance with the formal requirements of Rule 106 that apply specifically to service of citation. Accordingly, we affirm the judgment of the court of appeals.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** August 30, 2013

11