James David KEY, M.D., Appellant,

v.

Gwen MUSE, Appellee.

No. 05–11–00071–CV.

Court of Appeals of Texas,
Dallas.

Oct. 24, 2011.

Rehearing Overruled Nov. 28, 2011.

## OPINION

Opinion By Justice MURPHY.

This accelerated interlocutory appeal presents the question of first impression in this Court of whether a defendant who has not been served with citation or appeared in a health care liability lawsuit is a "party" for purposes of the expert-report requirements of subsection 74.351(a). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (West 2011). James David Key, M.D. challenges the trial court's denial of his motion to dismiss Gwen Muse's health care liability lawsuit against him, contending in two issues that Muse's expert report was not timely served, and alternatively, the report was deficient. Key also contends the trial court abused its discretion by failing to award him statutory attorney's fees and costs. *See id.* § 74.351(b)(1). We reverse and remand.

## BACKGROUND

Muse filed suit against Key on June 11, 2009, claiming negligence as to her surgical procedure in April 2007.[1] Muse alleged Key was not in a "proper condition to perform the surgery" and that his negligence caused damage to her spinal cord, bladder, and an electrical stimulator that was attached to her spine. The parties do not dispute Muse's failure to serve Key with citation until July 28, 2010, more than a year after she filed suit. Service of process was achieved only after Muse sought authorization for substituted service in June 2010. *See* TEX.R. CIV. P. 106(b). Muse attributes that delay to Key's conduct, contending he actively evaded service.

Muse filed an expert report and curriculum vitae of Dr. James Butler on October

Jennifer D. Leblanc, Bryan Rutherford, MacDonald Devin, P.C., Dallas, for Appellant.

Barrett W. Stetson, Thomas P. Moynihan, Matt McKool, Law Firm of Barrett W. Stetson, Dallas, for Appellee.

Before Justices BRIDGES, MARTIN RICHTER, and MURPHY.

---

1. Muse also sued the physician assisting Key during the surgical procedure and the hospital where Key performed the procedure. She later non-suited her claims against these defendants, leaving Key as the only defendant.

5, 2009, which was within 120 days of the date she filed her original petition. The document included a "Certificate of Service," which indicated that on October 2, 2009, Muse sent the report and CV to Key at four different addresses by certified mail, return receipt requested. Muse asserts that the mail was "returned unclaimed." In an affidavit attached to his motion to dismiss, Key denied receiving the report or CV of Butler in 2009 or any time before he filed his answer on August 12, 2010. On September 3, 2010, Muse sent Key's attorney a copy of the October 2009 filing with Butler's report and CV.

Key moved to dismiss Muse's health care liability suit on September 22, 2010, arguing Muse did not comply with the statutory 120–day deadline for serving expert reports. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). Key also objected to the adequacy of Butler's report as to the standard of care, Key's alleged breach of that standard, and the causal relationship between Key's alleged negligence and Muse's injuries. *See id.* § 74.351(r)(6). The trial court denied Key's motion without stating the grounds. This accelerated interlocutory appeal followed. *See id.* § 51.014(a)(9) (West 2008) (authorizing interlocutory appeal of denial of motion to dismiss filed under subsection 74.351(b)).

## DISCUSSION

Key's two appellate issues of timeliness and sufficiency of the expert report track the arguments raised in his motion to dismiss. Because the timeliness of the expert report is a threshold issue and is dispositive of the appeal, we begin with an overview of the applicable law and analysis of that issue. *See Rosemond v. Al–Lahiq,* 331 S.W.3d 764, 767 (Tex.2011) (per curiam).

## Applicable Law & Legal Standards

■ To proceed with a health care liability claim, a claimant must comply with the expert-report requirements of chapter 74 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351; *Stockton v. Offenbach,* 336 S.W.3d 610, 614 (Tex.2011). Specifically, section 74.351 requires that, within 120 days of filing an original petition, a claimant must "serve on each party or the party's attorney one or more expert reports" that provide a fair summary of the expert's opinions regarding applicable standards of care, how the claimant's physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), (r)(6). The 120–day deadline for serving expert reports is strict and requires mandatory compliance. *Stockton,* 336 S.W.3d at 614; *Ogletree v. Matthews,* 262 S.W.3d 316, 320 (Tex.2007) (noting strict nature of 120–day deadline). If the claimant does not serve an expert report within the prescribed period and the parties have not agreed to extend the deadline,[2] the affected physician may obtain both dismissal of the claim and reasonable attorney's fees and costs. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b). A trial court has no discretion to deny a physician's motion to dismiss under these circumstances. *Id.*

We review a trial court's ruling on a motion to dismiss a health care liability claim for an abuse of discretion. *See Jernigan v. Langley,* 195 S.W.3d 91, 93 (Tex. 2006) (per curiam); *Baylor Univ. Med. Ctr. v. Biggs,* 237 S.W.3d 909, 916 (Tex. App.-Dallas 2007, pet. denied). A trial

---

**2.** *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (date for serving expert report may be extended by written agreement of affected parties).

court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court under similar circumstances. *Biggs*, 237 S.W.3d at 916. But a trial court has no discretion in determining what the law is or in applying the law to the facts. *Id.* (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992)). Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id.*

Resolution of Key's timeliness issue also requires us to construe subsection 74.351(a) of the civil practice and remedies code. Statutory construction is a legal question we review de novo. *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex.2007). Our primary objective in construing a statute is to determine and give effect to the legislature's intent as expressed by the language of the statute. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex.2008). "In doing so, we begin with the statute's plain language because we assume the legislature said what it meant, and thus, that its words are the surest guide to its intent." *Lone Star HMA, L.P. v. Wheeler*, 292 S.W.3d 812, 816 (Tex.App.-Dallas 2009, no pet.) (citing *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex. 1999)). We use the legislature's definitions and consider any technical or particular meaning the words may have acquired. *City of Rockwall*, 246 S.W.3d at 625 (citing TEX. GOV'T CODE ANN. § 311.011(b) (West 2005)). Chapter 74 also provides that terms used but undefined in the statute "shall have such meaning as is consistent with the common law." TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(b); *see also Stockton*, 336 S.W.3d at 616.

## Analysis

Key's primary argument in support of his timeliness issue implicates the statute's requirement that a claimant serve an expert report on each *"party* or the *party's* attorney." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (emphasis added). Key argues that to be a "party" to a lawsuit, one must be named in the pleadings and either be served, have accepted or waived service, or otherwise made an appearance in the suit. He contends he did not become a "party" to Muse's suit until July 2010 after Muse served him with citation through substituted service; as a result, Muse did not satisfy subsection 74.351(a)'s service requirement because she did not serve Butler's report on a "party" within 120 days of filing her original petition. He maintains the trial court therefore was required to dismiss Muse's lawsuit. *Id.* § 74.351(b).

The term "party" is not defined in the statute, and this Court has not previously addressed the meaning of this word in the context of chapter 74's expert-report requirements. Several appellate courts, however, have considered the meaning of the term "party" as used in subsection 74.351(a). *See Zanchi v. Lane*, 349 S.W.3d 97, 102–03 (Tex.App.-Texarkana 2011, no pet. h.); *Carroll v. Humsi*, 342 S.W.3d 693, 698–99 (Tex.App.-Austin 2011, no pet.); *Dingler v. Tucker*, 301 S.W.3d 761, 767 (Tex.App.-Fort Worth 2009, pet. denied); *Carreras v. Zamora*, 294 S.W.3d 348, 350 (Tex.App.-Corpus Christi 2009, no pet.); *Yilmaz v. McGregor*, 265 S.W.3d 631, 640 (Tex.App.-Houston [1st Dist.] 2008, pet. denied). All but one of these courts determined the word "party" in this context means a physician or other health care provider who has been (1) named in a health care liability suit and (2) served with citation and the petition, accepted or waived such service, or made an appearance. *See Carroll*, 342 S.W.3d at 698–99; *Dingler*, 301 S.W.3d at 767; *Carreras*, 294 S.W.3d at 350; *Yilmaz*, 265 S.W.3d at 640.

Of importance to these courts in determining when a defendant physician becomes a "party" under subsection 74.351(a) was whether that physician has a duty to participate in the lawsuit. Until a defendant has been served with process or otherwise made an appearance, that defendant has no obligation to take part in the proceedings. *See Dingler*, 301 S.W.3d at 766; *Carreras*, 294 S.W.3d at 350; *Yilmaz*, 265 S.W.3d at 637; *see also Ross v. Nat'l Ctr. for the Emp't of the Disabled*, 197 S.W.3d 795, 797–98 (Tex.2006) (per curiam) ("While diligence is required from properly served parties or those who have appeared, . . . those not properly served have no duty to act, diligently or otherwise."). Similarly, no actions may be taken against a defendant until service or appearance. *See Mapco, Inc. v. Carter*, 817 S.W.2d 686, 687 (Tex.1991) (per curiam) ("In no case shall judgment be rendered against any defendant unless upon service, or acceptance or waiver of process, or upon an appearance.") (citing Tex.R. Civ. P. 124). The courts reasoned that subsection 74.351(a) has meaning only if the defendant has a duty to participate in the lawsuit at the time the expert report is served given the additional deadline for filing objections to the expert report. *See Carroll*, 342 S.W.3d at 698–99.

■ Specifically, subsection 74.351(a) mandates that "not later than the 21st day after the date [the report] was served" a defendant "must file and serve any objection to the sufficiency of the report." Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a). If a physician or health care provider fails to "file and serve" objections within the twenty-one-day period, all objections to the sufficiency of the report are waived. *Id.* A defendant that "files" with the court any objection to the report before being served with process, however, submits to the court's jurisdiction and waives any poten-

tial personal jurisdiction defense or service-of-process objections. *See Carreras*, 294 S.W.3d at 350; *Yilmaz*, 265 S.W.3d at 638. These courts concluded the legislature would not have imposed this procedural requirement on a defendant physician or health care provider, risking waiver for a non-complying report, unless the legislature contemplated that the physician or health care provider was subject to the court's jurisdiction through service of process, waiver, or an appearance at the time the report is served. *Carroll*, 342 S.W.3d at 698; *Carreras*, 294 S.W.3d at 350 ("[A] defendant should not be forced to waive proper service of process to protect its rights under chapter 74. . . ."); *Yilmaz*, 265 S.W.3d at 638.

The Texarkana court of appeals recently reached a different conclusion from the Austin, Corpus Christi, Fort Worth, and Houston courts of appeals and determined that service of process is not necessary before one is recognized as a "party" under subsection 74.351(a). *See Zanchi*, 349 S.W.3d at 102 ("[O]ne should be recognized as a party when named in a lawsuit, even before being served with process."). In its analysis, the court applied a broad definition—"party" is "one of the litigants in a legal proceeding; a plaintiff or a defendant in a suit"—and concluded that recognizing persons as parties at the time they are named in the pleadings "fits better with the overall structure of the statute and with the general sense of what a 'party' is." *Id.* (quoting Webster's Unabridged Dictionary 1415 (2d ed. 2001)).

The court in *Zanchi* acknowledged that "two competing problem scenarios" have arisen from the legislature's unstated assumption that a plaintiff will have served the defendant with process before the 120-day expert-report deadline. *Id.* The court explained the first scenario leads to "draconian results"; that is, if one does not

become a party until served with process and that service is not accomplished before the 120–day deadline, the suit must be dismissed for lack of service of the required report. *Id.* at 103. Conversely, if a defendant becomes a party when suit is filed but service of process is delayed beyond the 120–day deadline, the defendant could have a possible deadline to object to the expert report before he is even obligated to answer the lawsuit. *Id.* The court reasoned the second scenario "results in a much less severe situation" and stated the "relatively minor anomaly" posed by the second scenario "should not dictate that one is not a party until served." *Id.*

In opting for the second scenario of placing the defendant in the position of objecting to a report prior to being obligated to appear in the lawsuit, the court in *Zanchi* engrafted a remedy that the second part of subsection 74.351(a) is not implicated until the defendant has a "duty to participate in the proceedings." *Id.* at 104. The court suggested that the defendant might "[o]ut of an abundance of caution" wish to file objections within twenty-one days after that court issued its opinion. *Id.* at n. 12. Under this analysis, it is unclear when the defendant's objection to the expert report would have to be filed. Additionally, the trial court would be required to craft an exception to the express statutory twenty-one day time line for filing objections to expert reports in situations where the defendant has not been served with process or appeared.

With the adoption of subsection 74.351(a), the legislature created a strict 120–day deadline for serving expert reports, denying trial courts the discretion to deny motions to dismiss. *Ogletree*, 262 S.W.3d at 319–20. Only two statutory exceptions have been authorized and recognized for the 120–day deadline. *See* Tex. Civ. Prac. & Rem.Code § 74.351(a), (c);

*Stockton*, 336 S.W.3d at 615–16. No independent exception was allowed by the legislature for filing objections to insufficient expert reports.

The Texas Supreme Court has not analyzed the precise question before us—when does a defendant become a "party" under subsection 74.351(a). Based on its observations about the expert-report framework, however, the court appears to have assumed the legislature meant the "party" on whom the expert report is served would necessarily be a party by service of process or an appearance. *See Stockton*, 336 S.W.3d at 618–19.

Specifically, the supreme court in *Stockton* was faced with a claimant's difficulty in serving both the petition and the expert report due to the physician's unknown whereabouts. The claimant argued first that "in the same way due diligence in the service of process can interrupt the running of the statute of limitations, so too should due diligence in the service of the expert report interrupt the running of the statutory 120–day expert report deadline." *Id.* at 615. The claimant argued alternatively that the expert-report deadline violated the open courts provision in the Texas Constitution as applied to her because "a defendant named in a lawsuit does not become a party before service or appearance" and it was "impossible to serve the expert report within 120 days because of the doctor's disappearance and the trial court's delay [in granting substitute service]." *Id.* at 618.

Addressing the claimant's diligence argument in *Stockton*, the court noted that chapter 74 does not define "served" and under common law, service includes notions of diligence and relation back. *Id.* at 616. Yet the court stopped short of deciding whether, under this language, a statutory diligence exception applies to the expert-report deadline, because the

claimant's unexplained four months of inactivity and her failure to alert the trial court to the urgency of the deadline failed to create a fact question of diligence. *Id.* at 617. Stated differently, the record established a lack of diligence as a matter of law.

After concluding the claimant in *Stockton* had not met her burden to create a fact issue as to diligence, the court addressed the open courts argument based on an assumption "a defendant named in a lawsuit does not become a party before service or appearance." *Id.* at 618. The court observed that the legislature's decision to calculate the 120–day expert-report deadline from the date of filing suit rather than its service on the defendant "appears to assume that serving a physician or other health care provider will be simple and straightforward." *Id.* The supreme court added: "That, however, is not always the case, and when complications arise ... section 74.351(a) presents a very small window through which to serve both the lawsuit and the expert report." *Id.* at 618–19. The supreme court noted that calculating the deadline for serving the expert report from the date the physician or other health care provider becomes a party to the proceeding through service or appearance (rather than from the date the lawsuit is filed) would "better fit the statute's requirement that the expert report is to be served on 'each party or the party's attorney' " but conceded any change in the statute is the prerogative of the legislature. *Id.* at 619.

Muse does not offer a different meaning of the term "party" from the construction advanced by Key. Nor does she cite or distinguish the cases from the majority of appellate courts that have specifically addressed the term "party" as used in this statute. Rather, she asserts the statute should be interpreted liberally in conjunction with the Texas Government Code and should not be construed to "allow a medical malpractice Defendant to deliberately evade service of citation and thereafter argue for dismissal because he had not been served within the time set for the service of the expert report." Like the claimant in *Stockton,* Muse also argues for a diligence exception to the 120–day deadline. She maintains her case should be allowed to proceed under equitable principles, asserting it would be inequitable to allow Key to escape liability on a claim because he was able to "dodge" service for 120 days.

We recognize the unexpected dilemma claimants face in trying to comply with the strictures of subsection 74.351(a) when a defendant physician or health care provider is avoiding service or has disappeared altogether. Yet, we are not permitted to engraft exceptions to the plain language of subsection 74.351(a) in order to address the unanticipated errant or absent defendant. *Stockton,* 336 S.W.3d at 619. In the same subsection 74.351(a) in which the legislature created a hard-and-fast deadline for claimants to serve expert reports, the legislature also created a similarly strict deadline for the physician or other health care provider to object to the expert report; if the physician or health care provider does not file objections twenty-one days after service, any objections to the report are waived. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a). Importantly, requiring an unserved defendant to "file" an objection, and thus appear in the lawsuit and waive jurisdictional challenges, would be unprecedented. Such a requirement also does not advance the stated purpose of the statute to prevent frivolous lawsuits. *See Lewis v. Funderburk,* 253 S.W.3d 204, 205 (Tex.2008) (purpose of statute).

Neither the language nor the purpose of subsection 74.351(a) allows us to fix this imperfection in the statute by judicial fiat. *See, e.g., Stockton,* 336 S.W.3d at 619. Accordingly, we conclude, in accordance with the analyses of the majority of appellate courts considering the question, that the term "party" as used in subsection 74.351(a) means a defendant physician or other health care provider who has already been served with process, accepted or waived service, or made an appearance in the case. *See Carroll,* 342 S.W.3d at 698–99; *Dingler,* 301 S.W.3d at 767; *Carreras,* 294 S.W.3d at 350; *Yilmaz,* 265 S.W.3d at 640.

Here, Muse failed to serve Key until a year after she filed suit. Importantly, even if a diligence exception for service were applicable to the statutory deadline, Muse failed to raise a fact question as to her diligence. *See Stockton,* 336 S.W.3d at 617; *Ashley v. Hawkins,* 293 S.W.3d 175, 180–81 (Tex.2009). The record shows Muse filed suit in June 2009 and attempted to serve Key at that time. The record also shows that in August 2009, after multiple attempts at service, she considered filing a motion for substituted service (before the 120–day deadline expired) and sought affidavits from her process servers "so [they could] request service by Rule 106." Muse did not file a motion for substituted service, however, until June 2010, more than a year after she filed her original petition. Nothing in the record indicates that from late 2009 until June 2010 Muse acted diligently to serve Key with the petition or seek other options for service of process; a global statement that counsel's paralegal continued to call numbers for Key in the interim does not create a fact issue as to diligence. *See Ashley,* 293 S.W.3d at 180–81. Under our construction of the term "party" used in subsection 74.351(a), and even assuming a dili-

gence exception, Muse did not serve an expert report in compliance with subsection 74.351(a). The trial court therefore abused its discretion when it denied Key's motion to dismiss. *See Biggs,* 237 S.W.3d at 916.

Having concluded the trial court abused its discretion when it denied Key's motion to dismiss, we sustain Key's first issue, which includes a complaint the trial court erred in failing to award him mandatory attorney's fees and costs. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(b)(1). Based on our resolution of Key's first issue, we do not address Key's second issue in which he challenges the adequacy of the expert report. *See* Tex.R.App. P. 47.1.

## CONCLUSION

Because we conclude the trial court erred in denying Key's motion to dismiss, we reverse the trial court's order. Pursuant to subsection 74.351(b)(1) of Texas Civil Practice and Remedies Code, we remand the case to the trial court for the limited purpose of determining Key's reasonable attorney's fees and costs of court and for entry of an order dismissing Muse's claim against Key with prejudice.