**Opinion issued April 18, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00987-CV

————————————

**SAM LO, M.D. AND SOUTHWEST RADIOLOGY ASSOCIATION,**
**Appellants**

**V.**

**RITA GONZALES, Appellee**

On Appeal from the 164th District Court
Harris County, Texas
Trial Court Case No. 2011-64104

## MEMORANDUM OPINION

In this interlocutory appeal, Rita Gonzales sued Sam Lo, M.D., and

Southwest Radiology Association (collectively, "Lo") for medical malpractice. Lo

moved to dismiss Gonzales's claims, but the trial court denied Lo's motion. In two

issues, Lo contends that the trial court erred in denying the motion to dismiss because (1) Gonzales's expert report did not adequately set out the causal connection between Lo's alleged breach of the standard of care and the alleged injuries to Gonzales and (2) Gonzales's expert was not qualified to opine on causation.

We reverse and remand.

## Background

On July 16, 2008, Gonzales was diagnosed with lumbar spondylosis with spondylolisthesis. She underwent a lumbar fusion surgery performed by Dr. Jeremy Wang, who is not a party to the underlying case. Over a year later, on July 30, 2009, Gonzales returned to Dr. Wang, complaining of lumbar pain. Dr. Wang ordered several radiological tests, including x-rays, a bone scan, MRI scans of Gonzales's hips and lumbar spine, and a CT scan of Gonzales's lumbar area.

On August 7, 2009, Gonzales had an x-ray of the lumbar spine performed at Clear Lake Regional Medical Center, and Lo interpreted the results. Lo's report stated, "Stable changes from patient's previous L3-L4 through L5-S1 laminectomies, posterior discectomies and spinal fusion as described. No evidence of instability. Stable ossific density in the posterior L3-L4 disc space and L4-L5 posterior marginal osteophyte formation possibly causing osteophytic neuroforaminal encroachment." On August 8, 2009, a CT scan of Gonzales's

2

lumbar spine was performed, and Lo interpreted those results as demonstrating that Gonzales has "disc osteophyte complex L3-S1 with neuroforaminal encroachment." Gonzales underwent a lumbar MRI on August 10, 2009, and Lo interpreted those results as demonstrating "disc osteophyte complex with neuroforaminal stenosis." Gonzales alleged that, in interpreting these test results, Lo did not specifically identify the absence of bony bridging at any of the levels of Gonzales's spine that had been fused in her previous surgery.

Gonzales returned to Dr. Wang, who explained to her that the test results showed no instability in her spine, and he recommended that she return for a follow-up appointment in a month.[1] On August 29, 2009, Gonzales was evaluated by Dr. Richard Francis, who "noted that the x-rays showed no convincing evidence of bony bridging from [Gonzales's] original back surgery." Dr. Francis ordered a myleogram and an additional CT scan, performed on September 2, 2009, which "showed no continuous osseous fusions from L3-S1." Dr. Francis diagnosed Gonzales with a "failure of fusion," and he performed a revision back surgery on September 23, 2009. Gonzales alleged that, during the surgery, Dr. Francis "found

---

[1] There is a discrepancy concerning when this appointment with Dr. Wang occurred. In her original petition, Gonzales alleged that this appointment occurred on August 8, 2009, the day of her CT scan, and the day before her lumbar MRI. The medical records from Dr. Wang's office, however, reflect that Gonzales did not meet with Dr. Wang until August 24, 2009.

3

[that] the lumbar spine had not fused, causing movement which was impinging on the spinal cord causing pain to [Gonzales]."

Gonzales subsequently filed suit against Lo and Southwest Radiology Association for medical malpractice. Gonzales alleged that Lo was negligent in (1) failing to timely diagnose Gonzales's failed fusion as the cause of her lower back pain; (2) failing to correctly read and interpret the radiographs of Gonzales's spine; and (3) failing to diagnose instability from the absence of bony bridging at the fusion site as the cause of Gonzales's low back pain. Gonzales alleged that Southwest Radiology was negligent in (1) failing to timely diagnose Gonzales's failed fusion as the cause of her back pain; and (2) failing to correctly read and interpret the spinal radiographs. Gonzales also alleged that Southwest Radiology was vicariously liable for Lo's negligence under the doctrine of respondeat superior. Gonzales sought damages for, among other things, past and future physical pain and past and future medical expenses.

Gonzales timely filed and served the expert report of Dr. Randall Patten, a board-certified radiologist. Lo objected to Dr. Patten's expert report and moved to dismiss the case pursuant to Civil Practice and Remedies Code section 74.351(b). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (Vernon 2011). Lo objected on the grounds that Dr. Patten's expert report failed to set out the applicable standard of care, failed to appropriately address causation, and failed to

4

demonstrate that Dr. Patten was qualified to render an opinion on causation. Lo requested that the trial court dismiss Gonzales's claims and award reasonable attorney's fees pursuant to section 74.351(b).[2]

Gonzales requested, and the trial court granted, a thirty-day extension of time pursuant to section 74.351(c) to cure any deficiencies in Dr. Patten's expert report. *See id.* § 74.351(c) (providing that if expert report is considered to be untimely because elements of report are found deficient, court may grant one thirty-day extension for claimant to cure deficiencies). Gonzales subsequently filed an amended expert report by Dr. Patten.

In this report, Dr. Patten stated that all of his opinions were based on reasonable medical probability and "the information I have reviewed to date, as well as my education, training, knowledge, and direct experience, in the examination, reading and review of radiographic studies, including ultrasounds of the abdomen, in patients the same as, or similar to, Ms. Gonzales." After describing Gonzales's medical history, including her visits to Dr. Wang and Dr.

---

[2]    Section 74.351(b) provides that if an expert report has not been served within the 120-day time period, on the motion of the affected physician or health care provider, the court shall enter an order awarding reasonable attorney's fees and court costs and dismissing the claim with prejudice. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (Vernon 2011); *Key v. Muse*, 352 S.W.3d 857, 864 (Tex. App.—Dallas 2011, no pet.) (remanding case to trial court for purpose of determining reasonable attorney's fees and court costs and entering order dismissing plaintiff's claim with prejudice).

Francis and Lo's interpretations of her radiological test results, Dr. Patten stated the following standard of care with respect to Lo and Southwest Radiology:

1.      The standard of care required that Dr. Lo correctly interpret the lumbar x-ray and CT scan done on Ms. Gonzales in August 2009 as being diagnostic of a failed fusion. The radiologist interpreting a CT scan on a patient who has undergone a fusion should evaluate the presence of new bone formation which is necessary to achieve a successful fusion. This requires cuts thinner than the standard 3 mm slices. By 12 months post-op, in a successful fusion, there should be evidence of obvious bony bridging between the vertebral bodies. The absence of bony bridging by this time interval indicates a failed fusion.

2.      The standard of care required Southwest Radiology Association to provide its patients with competent radiologists who could properly and correctly interpret and report radiographic findings seen on x-rays and CT scans of the lumbar spine.

Dr. Patten then stated the following with respect to Lo's alleged breach of the standard of care and the causal relationship between the alleged breach and Gonzales's injuries:

Dr. Lo breached and violated the standard of care when he failed to correctly interpret the lumbar x-ray and CT performed on Rita Gonzales in August 2009. Although the x-rays and CT showed a lack of bony bridging, osseous integration and failure of fusion, these findings were not properly reported to the surgeon. Dr. Lo, in reasonable medical probability, should also have had slices thinner than the standard 3 mm slice obtained in order to best evaluate the integrity of Ms. Gonzales' spinal fusion. In failing to obtain slices smaller than 3 mm, Dr. Lo breached and violated the standard of care. More than twelve months after surgery, radiographs should demonstrate evidence of obvious bony bridging between the vertebral bodies. Ms. Gonzales['s] radiographs did not[,] but these findings were not reported. Instead, the findings that were reported to the surgeon were that the fusion was stable. If Dr. Lo had correctly

6

interpreted the films and reported the absence of bony bridging, in reasonable medical probability, Ms. Gonzales' spinal instability would have been diagnosed and treated by Dr. Wang, the initial surgeon. Ms. Gonzales would have been treated without having to obtain a second opinion which required another work-up before surgery was recommended. Ms. Gonzales would have avoided the pain she described to Dr. Francis as including weakness in both legs, difficulty walking and bending, and an inability to sit or stand for prolonged periods of time. Because Dr. Lo breached and violated the standard of care and did not correctly interpret and report the absence of bony bridging on the lumbar x-ray and CT scan, Dr. Lo caused Ms. Gonzales to suffer worsening and debilitating pain.

Dr. Patten also opined that Southwest Radiology breached the standard of care when it

> failed to provide its patients with competent radiologists, who should realize that absence of osseous bridging was diagnostic of a failure of the fusion, who could properly and correctly interpret and report lumbar x-rays and CT scans. If Southwest Radiology Association had provided Ms. Gonzales with a competent radiologist to accurately interpret the imaging and report abnormalities seen in the lumbar x-ray and CT, Ms. Gonzales' failed fusion and spinal instability would have been diagnosed sooner. In reasonable medical probability, as described above, she would have avoided the worsening pain and weakness she was experiencing in August and September 2009 before her diagnosis and surgery by Dr. Francis.

Lo again objected to Dr. Patten's amended expert report and moved to dismiss Gonzales's claims. Specifically, Lo argued that the amended expert report still failed to state the applicable standard of care and still failed to establish a causal relationship between Lo's alleged breach of the standard of care and Gonzales's injuries. Lo also argued that Dr. Patten was not qualified to render an opinion on causation. Lo again requested that the trial court award him reasonable

7

attorney's fees. After a hearing, the trial court overruled Lo's objections and denied his motion to dismiss. The trial court granted Southwest Radiology's motion to dismiss any direct liability claims asserted against it by Gonzales, but it denied the motion to dismiss with respect to the vicarious liability claims. This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (Vernon Supp. 2012) (allowing interlocutory appeal from trial court's order denying section 74.351(b) motion to dismiss).

## Sufficiency of Expert Report

In his first issue, Lo contends that the trial court erroneously denied his motion to dismiss because Dr. Patten's expert report did not constitute a good faith effort to comply with the requirements of section 74.351(r)(6). Specifically, Lo argues that the expert report fails to establish a causal relationship between Lo's alleged breach of the standard of care and Gonzales's injuries.

### A.     *Standard of Review*

We review a trial court's ruling on a section 74.351 motion to dismiss for an abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). The trial court abuses its discretion if it acts arbitrarily or unreasonably or without reference to any guiding rules or principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam). In reviewing a trial court's ruling, we may not substitute our judgment for that of the

8

trial court. *Id.* Mere disagreement with the trial court's decision is insufficient to constitute an abuse of discretion. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985).

## B.     Requirements of Section 74.351(r)(6)

A plaintiff in a medical malpractice action must serve each defendant with an expert report. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). If the plaintiff timely serves an expert report, the defendant-physician may file a motion objecting to the sufficiency of the report. *Id.*; *Hillery v. Kyle*, 371 S.W.3d 482, 489 (Tex. App.—Houston [1st Dist.] 2012, no pet.). The trial court shall grant a motion challenging the adequacy of an expert report only if it appears to the court that the report "does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*); *Strom v. Mem'l Hermann Hosp. Sys.*, 110 S.W.3d 216, 221 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). Subsection 74.351(r)(6) defines "expert report" as "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician . . . failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *Palacios*,

9

46 S.W.3d at 878; *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858–59 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

The expert report need not marshal all of the plaintiff's proof, but it must include the expert's opinion on the three statutory elements: standard of care, breach, and causation. *Palacios*, 46 S.W.3d at 878; *Gray*, 189 S.W.3d at 859; *see also Kelly v. Rendon*, 255 S.W.3d 665, 672 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (stating that expert report is not required to prove defendant's liability). To constitute a "good faith effort" to comply with the statute, the expert report must provide enough information to fulfill two purposes: the report must (1) inform the defendant of the specific conduct that the plaintiff has called into question; and (2) provide a basis for the trial court to conclude that the claims have merit. *Palacios*, 46 S.W.3d at 879; *Gray*, 189 S.W.3d at 859. An expert report that merely states the expert's conclusions regarding the three statutory elements does not fulfill these two purposes. *Palacios*, 46 S.W.3d at 879; *Gray*, 189 S.W.3d at 859; *see also Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011) ("No particular words or formality are required [in the expert report], but bare conclusions will not suffice."). In the report, the expert must explain the basis for his statements and must link his ultimate conclusions to the facts of the particular case. *Wright*, 79 S.W.3d at 52; *Gray*, 189 S.W.3d at 859. In assessing the sufficiency of the report, the trial court may not draw any inferences; instead, it

must exclusively rely upon the information contained within the four corners of the report.  *Wright*, 79 S.W.3d at 52.

## C.      Sufficiency of Dr. Patten's Expert Report

Dr. Patten's expert report set out relevant facts, including Gonzales's prior surgery, her initial visit to Dr. Wang in July 2009, Lo's interpretations of the radiological test results, and Gonzales's subsequent treatment by Dr. Francis.  Dr. Patten then opined that Lo breached the standard of care when he failed to interpret Gonzales's x-ray and CT results as demonstrating a lack of bony bridging.  He further opined:

> If Dr. Lo had correctly interpreted the films and reported the absence of bony bridging, in reasonable medical probability, Ms. Gonzales' spinal instability would have been diagnosed and treated by Dr. Wang, the initial surgeon.  Ms. Gonzales would have been treated without having to obtain a second opinion which required another work-up before surgery was recommended.  Ms. Gonzales would have avoided the pain she described to Dr. Francis as including weakness in both legs, difficulty walking and bending, and an inability to sit or stand for prolonged periods of time.

Dr. Patten ultimately concluded that "[b]ecause Dr. Lo breached and violated the standard of care and did not correctly interpret and report the absence of bony bridging on the lumbar x-ray and CT scan, Dr. Lo caused Ms. Gonzales to suffer worsening and debilitating pain."

Dr. Patten opined that Lo's breach of the standard of care caused Gonzales "to suffer worsening and debilitating pain," and he opined that had Lo correctly

11

interpreted the radiological tests, Gonzales "would have avoided the pain she described to Dr. Francis as including weakness in both legs, difficulty walking and bending, and an inability to sit or stand for prolonged periods of time."[3] It is undisputed that Gonzales was already suffering from back and hip pain when she visited Dr. Wang in July 2009, before Dr. Wang ordered the radiological tests at issue. Dr. Patten's expert report gives no indication of when Gonzales's symptoms—weakness in her legs, her difficulty in walking and bending, and her inability to sit and stand for prolonged periods—began. It is unclear whether Gonzales started suffering from these particular ailments before she visited Dr. Wang in July 2009; after she visited Dr. Wang but before Lo conducted and interpreted the radiological tests on August 7 and 8; after the tests but before she saw Dr. Wang on August 24; after she saw Dr. Wang on August 24 but before she saw Dr. Francis on August 29; or after Dr. Francis determined that further tests needed to be conducted but before her surgery on September 23, 2009.

Because Gonzales contends that her pain worsened due to the delay in treatment allegedly caused by Lo, for the trial court to conclude that her claim has merit, the expert report must state facts supporting a conclusion that her pain became more severe or she developed new ailments, as opposed to her pain continuing at the level that it was at before Lo's involvement, during the delay.

---

[3] We note that, in his expert report, Dr. Patten specifically opined that Gonzales suffered "worsening" pain as a result of Lo's conduct.

12

*See Palacios*, 46 S.W.3d at 879 (stating that one purpose of expert report requirement is to provide basis for trial court to conclude that plaintiff's claim has merit); *see also Estorque v. Schafer*, 302 S.W.3d 19, 29 (Tex. App.—Fort Worth 2009, no pet.) (noting, in holding expert report insufficient in delay-of-treatment case, that "[the expert] did not explain how the alleged breaches led to a deterioration of kidney function and triggered needless pain and suffering . . . .").

Here, Dr. Patten opined that Gonzales's pain worsened as a result of her delay in treatment, but he provided no factual basis to support what her pain level was and what her specific ailments were before Lo became involved compared to what her pain level was and what her specific ailments were after Lo allegedly incorrectly interpreted the radiological tests and Dr. Wang decided not to treat Gonzales immediately. Dr. Patten's conclusion that Gonzales's pain worsened thus appears to be based solely on the fact that time passed between Lo's interpretation of the radiological tests and her surgery by Dr. Francis. The expert report contains no factual support for the contention that the delay itself actually caused any additional symptoms or additional pain beyond what Gonzales was already suffering when she first consulted Dr. Wang. Although "it may be facially appealing to infer [that] additional pain and suffering resulted from the alleged delay in diagnosis, the trial court is not permitted to rely on such speculation in determining the adequacy of the report." *See Jones v. King*, 255 S.W.3d 156, 160

(Tex. App.—San Antonio 2008, pet. denied) (noting, in case in which plaintiff alleged that delay in diagnosing meningitis caused disease to worsen and resulted in additional pain and suffering, that expert report failed "to provide any baseline from which the trial court could conclude that the delay caused the results"); *see also Wright*, 79 S.W.3d at 52 ("[R]ather, the expert must explain the basis of his statements to link his conclusions to the facts.").

Here, Dr. Patten's expert report stated, in a conclusory fashion, that the delay in treatment as a result of Lo's alleged errors caused Gonzales's pain to worsen, but he provided no factual basis to support this conclusion. *Hutchinson v. Montemayor*, 144 S.W.3d 614, 618 (Tex. App.—San Antonio 2004, no pet.) ("[L]iability in a medical malpractice suit cannot be made to turn upon speculation or conjecture. 'The proof must establish causal connection beyond the point of conjecture. It must show more than a possibility.'") (quoting *Lenger v. Physician's Gen. Hosp., Inc.*, 455 S.W.2d 703, 706 (Tex. 1970)).

Furthermore, Dr. Patten's conclusion that, had Lo correctly interpreted radiological tests and reported the absence of bony bridging, Dr. Wang would have diagnosed Gonzales's spinal instability and immediately treated it himself, requires us to infer that Dr. Wang relied solely on the fact that Lo, who did report that the radiological tests reflected that Gonzales had "osteophytic neuroforaminal encroachment," did not specifically report an absence of bony bridging when he

14

evaluated Gonzales's test results and determined that she did not need immediate revision surgery. This we may not do. *See Murphy v. Mendoza*, 234 S.W.3d 23, 28 (Tex. App.—El Paso 2007, no pet.) ("Nor can we infer that the surgeon relied upon the [allegedly erroneous] ambiguous report in deciding the surgical options.").

We therefore conclude that Dr. Patten's expert report fails to establish a causal connection between Lo's alleged breach of the standard of care and Gonzales's injuries.[4] We hold that the trial court erroneously denied Lo's motion to dismiss Gonzales's claims.

We sustain Lo's first issue.[5]

---

[4] Because we conclude that Gonzales's claims against Lo should be dismissed, we likewise conclude that her remaining claims against Southwest Radiology, based solely on vicarious liability, should also be dismissed. *Cf. Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671–72 (Tex. 2008) (per curiam) ("When a party's alleged health care liability is purely vicarious, a report that adequately implicates the actions of that party's agents or employees is sufficient."); *RGV Healthcare Assocs., Inc. v. Estevis*, 294 S.W.3d 264, 273 (Tex. App.—Corpus Christi 2009, pet. denied) (holding that if expert report adequately addresses statutory elements with respect to employee-physician, expert report is adequate to satisfy report requirement for vicarious liability claims against health care provider).

[5] Because we hold that Dr. Patten's expert report fails to establish a causal connection between Lo's alleged breach and Gonzales's injuries and the trial court has already granted Gonzales a thirty-day extension to cure any deficiencies in her expert report, we need not address Lo's second issue: whether Dr. Patten was qualified to render an opinion on causation. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c) ("If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant *one* 30-day extension to the claimant in order to cure the deficiency.") (emphasis added); *Ogletree v. Matthews*, 262 S.W.3d 316, 321 (Tex.

15

## Conclusion

Because we conclude that the trial court erred in denying Lo's motion to dismiss, we reverse the order of the trial court. Pursuant to Civil Practice and Remedies Code section 74.351(b), we remand the case to the trial court for the limited purpose of determining Lo's reasonable attorney's fees and court costs and for entry of an order dismissing Gonzales's claims against Lo and Southwest Radiology with prejudice.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

---

2007) (noting that Legislature authorized "a single" thirty-day extension for deficient reports).

16