**AFFIRM; and Opinion Filed June 4, 2013.**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-12-01428-CV**

_____

**ENNIS REGIONAL MEDICAL CENTER AND PETER ANTHONY EVENBLY, R.N.,
Appellants
V.
BRENDA CRENSHAW, INDIVIDUALLY AND AS NEXT FRIEND FOR MINORS
DEVEN COLLINS, JACOBIE COLLINS, AND LONNIE COLLINS, III, Appellees**

**On Appeal from the 160th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-11-07250**

## MEMORANDUM OPINION

Before Justices FitzGerald, Murphy, and Lewis
Opinion by Justice Murphy

Ennis Regional Medical Center appeals the trial court's denial of its chapter 74 motion to

dismiss Brenda Crenshaw's health care liability claims. *See* TEX. CIV. PRAC. & REM. CODE ANN

§ 74.351 (West 2011). Crenshaw brought her wrongful death suit individually and on behalf of

her grandchildren arising from the death of her daughter, Natalie Collins. In a single issue, Ennis

Regional contends Crenshaw's vicarious liability claims based on the alleged negligence of

unspecified nursing staff should be dismissed because they were not addressed in the expert's

report. We affirm.

## BACKGROUND

Collins died at Presbyterian Hospital Dallas two weeks after presenting to Ennis Regional

complaining of lower back pain. Crenshaw sued numerous parties, including Ennis Regional;

Peter Anthony Evenbly, R.N., a nurse employed by Ennis Regional who administered Dilaudid to relieve Collins's pain; Presbyterian Hospital Dallas, where Collins was transferred the day after presenting to Ennis Regional; Southwest Pulmonary Associates, the employer of Gary L. Weinstein, M.D.; and a number of doctors, including Weinstein.

Presbyterian Hospital Dallas and Evenbly originally were part of this appeal. They dismissed their appeals prior to oral submission. Accordingly, our recitation of background information and our analysis are limited to Ennis Regional unless context requires otherwise.

Regarding Ennis Regional, Crenshaw alleged in the original petition that Evenbly negligently administered an excess dose of Dilaudid and Ennis Regional was responsible for Evenbly's negligent actions under the theories of respondeat superior and vicarious liability. Crenshaw timely served Ennis Regional with an expert report by Matthew C. Lee, M.D. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (requiring service of an expert report within 120 days of filing an original petition). Lee opined in that report that "the medically probable explanation for Ms. Collins' respiratory arrest is administration of an overdose of Dilaudid by [Evenbly]." Lee also stated that his opinions were "limited to the breaches of the standard of care at Ennis Regional Medical Center in administering the narcotic overdose, and the fact that the resultant brain injury was a substantial factor in bringing about Ms. Collins' death."

Approximately a year later, Crenshaw filed an amended petition. Regarding Ennis Regional, Crenshaw added allegations "the nursing and other staff at [Ennis Regional]" breached the applicable standards of care and alleged Ennis Regional is liable for those breaches under theories of respondeat superior and vicarious liability. Crenshaw also amended her negligence claims against Evenbly, alleging he administered the Dilaudid too rapidly and failed to attend to Collins after doing so. She did not serve a new expert report.

Ennis Regional filed a chapter 74 motion to dismiss Crenshaw's new claims based in relevant part on the limited opinions Lee provided in his original report regarding the Dilaudid overdose. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b). Ennis Regional complained that Crenshaw's amended petition added entirely new allegations against Ennis Regional and "unidentified employees" as well as a new theory of negligence against Evenbly. Ennis Regional sought dismissal of the new claims because they were not mentioned in Lee's expert report. The trial court denied the motion, and Ennis Regional appealed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West Supp. 2012) (allowing interlocutory appeal from an order denying all or part of the relief sought by a motion under secion 74.351(b)).

The same day Ennis Regional filed its reply brief in this appeal, the Texas Supreme Court issued its opinion in *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625 (Tex. 2013). The court in *Potts* held that "an expert report that adequately addresses at least one pleaded liability theory satisfies the statutory requirements, and the trial court must not dismiss in such a case." *Id*. at 632. The court disapproved any cases that previously held differently. *Id*.

We allowed the parties to file supplemental briefs after issuance of the *Potts* decision. In response, Presbyterian Hospital Dallas and Evenbly forewent their appeals. Ennis Regional and Evenbly conceded in their supplemental brief that "*Potts* requires affirmance of the trial court's decision in this matter as to [Evenbly]" and withdrew Evenbly's appeal. Presbyterian Hospital Dallas's dismissal similarly was based on "a change in Texas law regarding section 74.351 expert reports" as announced in *Potts* and *TTHR Ltd. P'ship v. Moreno*, No. 11-0630, 2013 WL 1366028 (Tex. Apr. 5, 2013).

Ennis Regional remains the sole appellant, maintaining Crenshaw's new vicarious liability claims based on unidentified "nursing and other staff" not mentioned in Lee's expert report cannot survive. We therefore address that issue.

## DISCUSSION

### Standard of Review

We review a trial court's ruling on a motion to dismiss under chapter 74 for an abuse of discretion. *See Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex.2006) (per curiam); *Key v. Muse*, 352 S.W.3d 857, 859 (Tex. App.—Dallas 2011, no pet.). Under that standard, we may not substitute our judgment for that of the trial court. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992) (orig. proceeding). The test for determining an abuse of discretion is whether the trial court acted without reference to any guiding rules and principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). Stated differently, a trial court abuses its discretion if its decision is arbitrary and unreasonable. *Id.* at 242. A trial court has no discretion in determining what the law is or applying the law to the facts. *Walker*, 827 S.W.2d at 840.

### Applicable Law

Crenshaw was required to comply with the expert-report requirements of chapter 74 of the Texas Civil Practice and Remedies Code to proceed with her health care liability suit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351; *Stockton v. Offenbach*, 336 S.W.3d 610, 614 (Tex. 2011). A valid expert report must provide: (1) a fair summary of the applicable standards of care; (2) the manner in which the physician or health care provider failed to meet those standards; and (3) the causal relationship between that failure and the harm alleged. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *Moreno*, 2013 WL 1366028, at *3. A report is sufficient to meet the requirements of chapter 74 if it represents "an objective good faith effort to comply with the definition of an expert report." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(l); *Bakhtari v. Estate of Dumas*, 317 S.W.3d 486, 489 (Tex. App.—Dallas 2010, no pet.).

–4–

*Certified EMS, Inc. v. Potts*

Several appellate court decisions before *Potts* had discussed the extent to which an expert report must examine every liability theory alleged. *See Potts*, 392 S.W.3d at 627. The cases had reached varied results. *Id.* Some appellate courts determined an expert report that addressed only a single liability theory was sufficient for the entire suit to proceed. *Id.* at 627–28. Others insisted that any liability theory not addressed by an expert report must be dismissed. *Id.* at 628.

*Potts* resolved the issue. An expert report that satisfies the statutory requirements for one theory of liability alleged against a defendant is sufficient for the entire suit to proceed against that defendant. *Moreno*, 2013 WL 1366028, at *1; *Potts*, 392 S.W.3d at 632.

The supreme court explained in *Potts* that an expert report serves two functions. *Potts*, 392 S.W.3d at 630. First, it informs the defendant of the specific conduct the plaintiff has called into question. *Id.* Second, it provides a basis for the trial court to conclude the claims have merit. *Id.* The supreme court reasoned that an expert report need not cover every alleged liability theory to make the defendant aware of the conduct at issue, and the claim is not frivolous if that liability theory is supported. *Id.* at 631. The court also reasoned that this approach is consistent with the legislature's intent. "The Legislature's goal was to deter baseless claims, not to block earnest ones." *Id.*

### Analysis

Ennis Regional concedes the expert report complies with chapter 74 regarding the allegations against Evenbly and the vicarious liability claims based on those allegations. It complains about new vicarious liability claims based on new unidentified, unnamed parties. Specifically, it argues that "[a]s expansive as [*Potts*] is, it is impossible to read *Potts* (or any other case, and much less §74.351 itself) as approving a new complaint in an amended petition against a party *in personam* who is not mentioned, and whose alleged conduct is not mentioned,

in an earlier expert report." Ennis Regional emphasizes that had Crenshaw's amended petition added as parties the new "nurse-staff members (perhaps as John Does)," whose conduct (unrelated to the drug overdose claims) serves as the basis of Ennis Regional's vicarious liability, a chapter 74 motion to dismiss as to those new parties would result in "[c]ertain dismissal." It likens the situation to a vicarious liability claim "in the abstract."

Ennis Regional insists the holding and reasoning in *Potts* do not include the situation presented by Crenshaw's amended petition. It distinguishes *Potts* by arguing (1) *Potts* did not involve new post-expert-report allegations, and (2) the issue in *Potts* was whether the adequate expert report relating to vicarious claims against the medical provider required dismissal of direct liability claims not mentioned in the report. Underscoring the factual link in *Potts* between the conduct giving rise to the direct liability claims against the provider and the conduct supporting the vicarious liability claims against the provider, Ennis Regional asserts the court's holding does not encompass the situation where the new claims are wholly unrelated to the conduct and care covered by the expert report. Specifically, it argues "the new charge against the 'nurses-staff' is not a new 'liability *theory*'" but "a new 'health care liability claim.'"

Two decisions issued after *Potts* are relevant to an understanding of the scope of that decision and our analysis of Ennis Regional's arguments. A few months after *Potts*, the supreme court decided *Moreno*. That case concerned an infant injured during birth. *See Moreno*, 2013 WL 1366028, at *1. The mother brought health care liability claims against the hospital where the birth occurred, its nurses, and two doctors involved with the labor. She alleged both direct and vicarious liability claims against the hospital. The court of appeals concluded the expert reports were inadequate regarding the direct liability claims against the hospital and regarding the vicarious liability claims based on the nurses' actions. Regarding the vicarious liability claims based on the doctors' negligence, the court concluded the reports were adequate. *Id.* On

–6–

review, the supreme court agreed the expert reports addressing the hospital's vicarious liability for the actions of the doctors were adequate. *Id.* at *2, *3. Following its *Potts* decision, the court concluded the case could proceed against the hospital regarding all claims, "including [the wife's] claims that the hospital has direct liability and vicarious liability for actions of the nurses." *Id.* at *2, *3.

The second case is *Huepers v. St. Luke's Episcopal Hosp.*, No. 01-11-00074-CV, 2013 WL 1804470 (Tex. App.—Houston [1st Dist.] Apr. 30, 2013, no. pet. h.). In this case, a wife filed suit against St. Luke's when her husband suffered cardiac arrest while in the hospital's care. *Huepers*, 2013 WL 1804470, at *1. She initially sued St. Luke's for the negligent conduct of one of its doctors and timely filed an expert report opining on the hospital's vicarious liability. *Id.* No party contested the sufficiency of that report. During discovery, the wife learned the doctor was employed by Baylor College of Medicine. *Id.* The wife amended her petition by dropping St. Luke's and adding Baylor as a defendant. Later, after Baylor moved to designate St. Luke's as a responsible third party and its expert testified that St. Luke's nursing staff breached the standard of care by failing to monitor the patient's hemoglobin levels and notify the doctors of any changes, the wife amended her pleadings again; she added St. Luke's back into the lawsuit as a defendant based on vicarious liability for its nursing staff. *Id.* The wife served three additional expert reports regarding the claims based on the negligence of the nursing staff. St. Luke's objected to these reports as untimely and moved to dismiss the wife's new vicarious liability claims because "the claim as to the nurses' conduct was separate and distinct from the vicarious liability claim asserted against St. Luke's in the original petition and, as such, required a timely expert report." *Id.* at *1. The trial court dismissed the new claims, and the Houston appellate court reversed and remanded; it concluded that under *Potts* "[n]o further report was

required when [the wife's] petition was amended to add a new theory of vicarious liability against St. Luke's based upon nursing negligence . . . ." *Id.* at \*5.

The courts in both *Moreno* and *Huepers* allowed all claims against the hospital to continue once the expert report or reports satisfied the statutory requirements on one theory of liability. In *Moreno*, the report adequately addressed the vicarious liability claim based on physician negligence, and the case was allowed to proceed as to both direct liability and vicarious liability based on the nurses' negligence. Similarly, in *Huepers*, the unchallenged expert report addressing the hospital's vicarious liability based on physician negligence was sufficient to allow the case to proceed against the hospital based on a new "health care liability claim" added approximately a year after suit was filed and that involved claims for nursing staff negligence. *See Huepers*, 2013 WL 1804470, at \*5.

Neither the supreme court in *Moreno* nor the appellate court in *Huepers* distinguished between links in factual allegations or the timing of the claims. Ennis Regional's distinction that *Potts* did not involve new post-expert-report allegations appears of no consequence based on these cases. Nor do the cases distinguish between new claims unrelated to the conduct and care covered by the expert report. *Huepers*, like the circumstances presented by Ennis Regional here, involved the argument the new vicarious liability claims—based on "nursing staff" negligence— were new health care liability claims. The court rejected that argument.

These decisions are consistent with the reasoning in *Potts*. The expert report requirement is a threshold for cases to proceed. If an expert report on a single liability theory against a particular defendant satisfies the statutory requirements, the lawsuit is not frivolous as to that defendant. See *Potts*, 392 S.W.3d at 631. Discovery allows a claimant to develop and pursue— or to refine and drop—liability theories and claims. Summary judgment motions and other

procedural mechanisms allow the parties and the trial court to identify the facts to be tried and the law to be applied to those facts.

Ennis Regional concedes Lee's expert report complies with chapter 74 regarding the allegations against Evenbly and the related vicarious liability claims against Ennis Regional. Accordingly, the trial court did not abuse its discretion in denying Ennis Regional's motion to dismiss based on vicarious liability claims associated with nursing staff negligence. We overrule the sole remaining issue in this appeal and affirm the trial court's judgment.

/Mary Murphy/
MARY MURPHY
JUSTICE

121428F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ENNIS REGIONAL MEDICAL CENTER
AND PETER ANTHONY EVENBLY,
R.N., Appellants

No. 05-12-01428-CV      V.

BRENDA CRENSHAW, INDIVIDUALLY
AND AS NEXT FRIEND FOR MINORS
DEVEN COLLINS, JACOBIE COLLINS,
AND LONNIE COLLINS, III, Appellees

On Appeal from the 160th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-11-07250.
Opinion delivered by Justice Murphy.
Justices FitzGerald and Lewis participating.

In accordance with this Court's opinion of this date, the appeal as to appellant PETER ANTHONY EVENBLY, R.N. is **DISMISSED**.

The judgment of the trial court denying ENNIS REGIONAL MEDICAL CENTER's motion to dismiss is **AFFIRMED**.

It is **ORDERED** that appellees BRENDA CRENSHAW, INDIVIDUALLY AND AS NEXT FRIEND FOR MINORS DEVEN COLLINS, JACOBIE COLLINS, AND LONNIE COLLINS, III recover their costs of this appeal from appellants ENNIS REGIONAL MEDICAL CENTER AND PETER ANTHONY EVENBLY, R.N.

Judgment entered this 4th day of June, 2013.

/Mary Murphy/
_____
MARY MURPHY
JUSTICE

–10–